319 So.2d 118 (1975)
Ernest SAUNDERS, Appellant,
v.
STATE of Florida, Appellee.
No. W-95.
District Court of Appeal of Florida, First District.
May 9, 1975.
*119 Richard W. Ervin, III, Public Defender, and Michael J. Minerva, Asst. Public Defender, for appellant.
Robert L. Shevin, Atty. Gen., and Michael M. Corin, Asst. Atty. Gen., for appellee.
RAWLS, Chief Judge.
Appellant, Ernest Saunders, appeals from judgments and sentences for three direct criminal contempt charges committed by him in open court in the presence of the trial judge.
Appellant was called as a witness in the trial of his two brothers concerning a criminal episode of the threesome which allegedly took place on September 27, 1973. Appellant had previously been tried as to these alleged criminal acts and the jury had returned a verdict of not guilty. During *120 his own trial appellant voluntarily took the stand and testified. When appellant was called as a witness by the State during the trial of his brothers, the following transpired:
"Q Would you please state your full name, sir?
"A Ernest Saunders.
"Q I would like to direct your attention to the 27th of September, 1973, and ask you if you were with your brothers on that date.
"A (No response)
"THE COURT: Did you understand the question, sir?
"A I understood the question.
"THE COURT: You are hereby directed to answer that question.
"A (No response)
"Q Have you ever taken a trip in a U-Haul truck with your brothers?
"A (No response)
"THE COURT: Mr. Saunders, sit up straight, if you will, please, sir. Do you understand that question?
"A I understood it.
"Q Have you ever taken a trip in '73 with your brothers in a U-Haul truck?
"A (No response)
"THE COURT: The Court is hereby directing you to answer that question, Mr. Saunders, unless you wish to invoke some right of self-incrimination or any other right.
"A I take the fifth amendment.
"MR. MODESITT: Your Honor, this is not appropriate, and if we'd like to take it out of the hearing of the jury again, I would be glad to have it. There is no incriminating matter with regard to his answers and there is nothing that the defendant could be held for.
"THE COURT: Ladies and gentlemen, let me ask you to excuse yourselves again. We have another rule of law we need to get resolved. This is not unusual. I hope you don't think it is.
"(Thereupon the jury left the courtroom and the following proceedings were had:)
"THE COURT: Mr. Prosecutor.
"MR. MODESITT: Mr. Saunders has been acquitted of any charges arising out of this incident in a prior jury trial. The State is prepared to offer him any immunity regarding the robbery or false imprisonment for which he was charged, if the Court feels it is necessary. However, he has had a full trial on these charges and has been acquitted.
"THE COURT: He's been acquitted of both charges that are contained in the information?
"MR. MODESITT: Yes, sir, that is correct.
"THE COURT: Mr. Smith, do you have anything you wish to say?
"MR. SMITH: No, your Honor, but I think in the interest of justice maybe Mr. Saunders' former attorney, Mr. Minerva, might want to advise him of the kind of trouble that he may be getting himself into.
"THE COURT: I'm going to advise him of the trouble he may get into if he refuses to answer.
"Mr. Saunders, the Court is satisfied that there is no possibility of your being incriminated to the point that you will be jeopardizing yourself in any further prosecution. Both the United States Constitution and the Florida Constitution prohibit double jeopardy. Double jeopardy means that you cannot be tried twice for the same offense. And, your having been acquitted of the two counts in this Information in which your brothers are here on trial means that you cannot be tried again for that, even if you were to sit up here and admit yourself that you did it. You could *121 not be tried for that offense or these offenses in the Information. Now, when either side asks you a question, let me say now that the Court considers, after having been advised of your acquittal of these charges, that you do not have the right to invoke the fifth amendment because there is no incriminating evidence that could subject you to any further legal proceedings in these matters. The State has also, in addition thereto, the prosecutor has even offered immunity from any further prosecution. Because of this, the Court has the authority to direct you to answer those questions. Now, in the event that you do not answer those questions as the Court directs you, you subject yourself to possible contempt, direct criminal contempt for direct refusal to abide by the Court's directions or orders insofar as testimony. Now, the Court has the authority in a direct criminal contempt to sentence you to confinement or a fine or both if you refuse to answer the questions after the Court orders you to answer those questions. Do you understand all of that?
"A (Witness nodding head)
"THE COURT: Do you understand that there is no possibility of your being incriminated by anything you have to say here, both under the prohibition against double jeopardy and the Florida Constitution and the United States Constitution, and also with the immunity that has been offered to you by the State Attorney's office from any prosecution with regard to these offenses. There is no way that you can be prosecuted for anything having to do with the two counts in this information. Do you understand that?
"A (Witness nodding head)
"THE COURT: Do you understand that you may be held in contempt if you do not answer the questions after I have directed you to do so?
"A (Witness nodding head)
"THE COURT: Do you understand that as a result of a contempt citation by me you may be incarcerated or fined or both? Do you understand that?
"A (Witness nodding head)
"THE COURT: And let me further explain to you that just because you don't want to testify against your brothers, you do not have the right to remain silent because of what I have previously explained to you, your acquittal and the immunity of anything having to do with these charges. Do you understand that? Do you understand that?
"A (Witness nodding head)
"THE COURT: All right. Let the record reflect that the defendant has nodded his head in an understanding of the Court's directions. Now, when I direct a question to you and when either of the attorneys address a question to you, you are directed to answer in an audible fashion. An audible fashion means by exercising your vocal cords and saying either yes or no or answering the question. Do you understand that?
"A (Witness nodding head)
"THE COURT: Now, I'm directing you to make an audible answer to my inquiries at this point. Do you understand that?
"A (Witness nodding head)
"THE COURT: Either say yes or no.
"A Yes.
"THE COURT: Yes, you do understand. All right. Now, is there any question in your mind as to the trouble that you may incur if you refuse to answer the questions directed to you by either the State Attorney's office or by counsel for the defense?
"A No question.
"THE COURT: No question in your mind whatsoever. All right, sir.
*122 "MR. MODESITT: Your Honor, it might be appropriate, since the jury is out at this time, the defendant has made prior statements which are not necessarily incriminating against his brothers, but during his own trial gave testimony under oath and this is the only testimony we seek at this time. I believe it would be appropriate if the Court would apprise the defendant of the possible perjury charges which could arise if his statements here today contradict what he gave to the Court previously under oath.
"THE COURT: All right, sir. Let me advise you further, Mr. Saunders, that if you have testified previously in Court and you have testified under oath and you are under oath at this point, that any contradiction or any change of your testimony could subject you to a charge of perjury, which is within the authority of the State Attorney's office to bring the charges of perjury against you if they see that your testimony differs and if there is some other intentional misrepresentation or aversion or change of story, that you subject yourself to a perjury charge, because you have previously been placed under oath and you have previously testified in other trials. Do you understand that?
"A Yes.
"THE COURT: Is there any question in your mind about what I have explained to you at this point?
"A No.
"THE COURT: Do you intend to answer the questions?
"A Hell no.
"THE COURT: What was that again.
"A No.
"THE COURT: I am directing you to answer the questions, Mr. Saunders. You are refusing the orders of the Court.
"A Refusing because I was brought here against my will, and I have received no subpoena and I was just drug out of the cell in Clearwater, yes, sir, and I'm not answering a damn one of the questions.
"THE COURT: I'm holding you in criminal contempt for use of profanity and I'm going to sentence you to 
"(Witness shaking fist)
"THE COURT:  you're only going to load yourself up now. I'm going to sentence you to thirty days on the use of profanity and criminal contempt. I am also going to sentence you to sixty days for refusing to answer any questions ordered to you by the Court. Do you intend to sit there like a bump on a log and remain silent?
"A (No response)
"THE COURT: Now, I'm not trying to bait you or anything, I'm just trying to impress on you the importance of what you are taking on at this point. Those sentences will run consecutively. That means ninety days at this point you're going to serve in the Leon County Jail. I am also going to fine you Five Hundred Dollars on each count of criminal contempt. That means a Thousand Dollars fine. Now, do you wish to reconsider at this point the stand that you have taken on your refusal to answer the questions?
"A (No response)
"THE COURT: I am offering you an opportunity to purge yourself of criminal contempt at this point. But make no mistake about it, this is business with me.
"A (No response)
"THE COURT: All right, Mr. Bailiff, take him out of the Courtroom.
"(The bailiff began to escort the witness toward the door of the courtroom)
"ERNEST SAUNDERS: Son-of-a-bitch.
"THE COURT: Come back here. All right. I don't intend for this thing to break up in a big crying, shouting thing.
*123 Now, what words did you say a while ago?
"A (No response)
"THE COURT: Mr. Starner, did you hear him?
"MR. STARNER: Yes, sir.
"THE COURT: What did he say?
"MR. STARNER: He called you a son-of-a-bitch.
"THE COURT: All right. I am sentencing you to a hundred days to run consecutively to that ninety days I have just sentenced you to. Now, let me advise you just to leave the courtroom and not make any further statements.
"(As Mr. Starner turned to escort the witness from the courtroom, a scuffle ensued)"
Before considering the points posed by appellant, we direct our attention to whether appellant who had testified at his own trial, had the constitutional right pursuant to the Fifth Amendment of the United States Constitution and Article I, Section 9 of the Constitution of the State of Florida to refuse to testify in the subsequent trial of his brothers.
The trial judge was eminently correct in noting that appellant had been acquitted by a jury of charges arising out of this alleged criminal episode and thus could not again be tried on these charges regardless of his testimony in his brothers' trial. However, the following colloquy shows that both the trial judge and the Assistant State Attorney recognized that appellant by testifying in the trial of his brothers could possibly subject himself to charges of perjury.
"MR. MODESITT: Your Honor, it might be appropriate, since the jury is out at this time, the defendant has made prior statements which are not necessarily incriminating against his brothers, but during his own trial gave testimony under oath and this is the only testimony we seek at this time. I believe it would be appropriate if the Court would apprise the defendant of the possible perjury charges which could arise if his statements here today contradict what he gave to the Court previously under oath.
"THE COURT: All right, sir. Let me advise you further, Mr. Saunders, that if you have testified previously in Court and you have testified under oath and you are under oath at this point, that any contradiction or any change of your testimony could subject you to a charge of perjury, which is within the authority of the State Attorney's office to bring the charges of perjury against you if they see that your testimony differs and if there is some other intentional misrepresentation or aversion or change of story, that you subject yourself to a perjury charge, because you have previously been placed under oath and you have previously testified in other trials. Do you understand that?
"A Yes."
In a similar case,[1] the Third District Court of Appeal recently reviewed in detail the constitutional right of a citizen, which flows from both the federal and the state constitution, to remain silent. We do not here repeat the exhaustive analysis contained in Salem, supra, of the federal and state decisions which elaborate on this constitutional right of our citizens. Based on Salem, supra, and the decisions cited therein, we conclude that under the circumstances of this case appellant had the constitutional right pursuant to the Fifth Amendment of the United States Constitution and Article I, Section 9 of the Constitution of the State of Florida to refuse to testify at the trial of his brothers. Appellant's judgment of contempt for *124 failure to testify at the trial of his brothers is reversed.
We now direct out attention to appellant's judgments and sentences for contempt which resulted from appellant's use of profanity in expressing his refusal to answer questions and in appellant's calling the trial judge a "son-of-a-bitch". While appellant had the constitutional right to refuse to testify he was not at liberty to exercise his right by the use of profanity or to call the judge a "son-of-a-bitch". His conduct in this regard was clearly contemptuous as it was calculated to embarrass and obstruct the court in its administration of justice and to lessen the authority and dignity of the trial court.[2] The only question remaining is whether the two judgments holding appellant in contempt for his profane conduct were properly entered by the trial judge. Appellant contends that these two[3] judgments were not proper as: 1) the trial judge did not follow the procedures outlined in Florida Rule of Criminal Procedure 3.830; 2) the evidence is insufficient to support the summary punishment for contempt as to Count III, because it does not appear that the trial judge heard the contemptuous remark; and 3) the trial judge should have afforded the appellant the opportunity to be represented by counsel.
Direct criminal contempt is governed by Florida Rule of Criminal Procedure 3.830, which provides in material part: 1) the judgment of guilt shall include a recital of those facts upon which the adjudication is based; 2) prior to adjudication, the judge shall inform defendant of the accusation against him and inquire as to whether he has any cause to show why he should not be adjudged guilty of contempt; and 3) defendant shall be given the opportunity to present evidence of excusing or mitigating circumstances.
Appellant argues that the record in this cause required reversal because the judge did not include a recital of facts upon which the adjudication of guilt was based, and that the fundamental error is the failure of the trial court to afford the appellant the opportunity to explain his actions. We do not agree.
The transcript speaks for itself. The trial judge patiently and courteously, with meticulous regard for this appellant's constitutional rights, sought to avoid the confrontation that appellant knowingly brought about. The purpose of the subject rule is to afford a defendant the basic constitutional guarantees scrivened by our forefathers after escaping from star chamber proceedings. Can it be logically argued that this defendant was not apprised of the accusation against him and that he was not afforded an opportunity to present evidence of mitigating circumstances? The facts are clearly set out in the transcript which supports the trial court's adjudication of "... I'm holding you in criminal contempt." A step-by-step recitation of each provision of the subject procedural rule is not requisite upon the trial judge. The record of the proceeding when taken in its totality is the scale upon which fundamental rights must be weighed. Kelly v. State, 254 So.2d 22 (1 Fla.App. 1971); Mower v. State, First District Court of Appeal, 308 So.2d 586, Opinion filed January 28, 1975; Boykin v. Alabama, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969); United States v. Frontero, 452 F.2d 406 (5th Cir.1971); and Codispoti v. Pennsylvania, 418 U.S. 506, 94 S.Ct. 2687, 41 L.Ed.2d 912 (1974).
As to appellant's contention that his "son-of-a-bitch" statement was outside *125 of the court's hearing and thus not committed in the actual presence of the court, we again look at the record. The trial judge obviously heard an expletive which triggered his statement from the bench, "What did you say?" Again, the appellant did not respond to the opportunity to "... present evidence of excusing or mitigating circumstances... ." but chose to remain silent, even after the bailiff advised the court, "He called you a son-of-a-bitch." The court reporter had no difficulty in recording the profane statement by appellant. To hold under these facts appellant's conduct did not constitute direct contempt would invite anarchy in the halls of justice.
Appellant's third point on appeal is that the trial court should have afforded him a right to counsel after it became evident that appellant might be found guilty and sentenced for contempt. The orderly administration of justice must be preserved if civilized society is to prevail. The stage in the instant cause was set: Citizens performing their duty by serving as petit jurors, witnesses foregoing their private affairs in attending court; bailiffs, court reporters, clerks, and other personnel, all to assure the constitutional guarantees of this republic to those accused of violating the laws of the sovereign; and one witness, who flaunts the authority of the sovereign contending that his right transgresses all others, and that he is entitled to profane this judicial proceeding without being subject to summary punishment until and unless he has been afforded counsel. To so hold would make a mockery of our judicial process. The trial judge in the instant cause fully advised this appellant of his rights and obligations. He unlawfully and scandalously rejected the direct order of the trial court. It was not the time nor the place to halt the trial of his brothers and seek counsel for appellant. We are not unaware of the broad statement in Argersinger v. Hamlin, 407 U.S. 25, 92 S.Ct. 2006, 32 L.Ed.2d 530 (1972), "... that absent a knowing and intelligent waiver, no person may be imprisoned for any offense, whether classified as petty, misdemeanor, or felony, unless he was represented by counsel." However, that case did not involve a direct contempt during the course of a trial. We hold that the "narrowly limited category of contempts" rule as set forth in Re Oliver, 333 U.S. 257, 68 S.Ct. 499, 92 L.Ed. 682 (1948), obtains the purpose of F.R.Cr.P. 3.830 (formerly Rule 1.830) as fully discussed by the Florida Supreme Court in Fisher v. State, 248 So.2d 479 (Fla. 1971) obviated any requirement of counsel for appellant.
The judgments of the trial court holding appellant in contempt for using profanity and refusing to answer questions and for calling the trial judge a "son-of-a-bitch" are affirmed.
The judgments appealed are reversed in part and affirmed in part.
JOHNSON, J., concurs.
McCORD, J., concurring in part and dissenting in part.
McCORD, Judge (concurring in part and dissenting in part).
I would affirm as to all of the contempt convictions. The question of whether or not appellant had the right to refuse to testify because to do so might uncover past perjury was not raised on this appeal either in the brief or in the assignments of error. The Appellate Court will not consider a question that has not been raised by an assignment of error. Paxton v. State, Fla. App. (1st), 304 So.2d 485. Had this point been raised on this appeal then we could get into the knotty questions involved in whether or not appellant had the right to refuse to give testimony upon making only a blanket invocation of the Fifth Amendment with no indication that it was based upon a fear that his testimony might uncover *126 previous perjury or was invoked merely to secure immunity from perjury he was about to commit. See the following cases where such questions were considered. Hoffman v. United States, 341 U.S. 479, 71 S.Ct. 814, 95 L.Ed. 1118 (1951); United States v. Wilcox, 450 F.2d 1131 (5th Cir.1971); Mason v. United States, 408 F.2d 903 (10th Cir.1969); Kronick v. United States, 343 F.2d 436 (9th Cir.1965); Glickstein v. United States, 222 U.S. 139, 32 S.Ct. 71, 56 L.Ed. 128 (1911). The only reason given by appellant for invoking the Fifth Amendment and refusing to testify was that he objected to having been removed from jail without a subpoena and brought to court. This affords no basis for the refusal.
NOTES
[1] Salem v. State of Florida, 305 So.2d 23 (3 Fla.App. 1974).
[2] Andersen v. Gerstein, 164 So.2d 891 (3 Fla. App. 1964).
[3] The appellant contended that all three judgments of contempt were invalid for these reasons. As we have already noted the judgment of contempt for refusing to testify was invalid for constitutional reasons and thus, we do not consider any further allegations concerning that judgment.