345 So.2d 641 (1977)
Fred AARON, Appellant,
v.
STATE of Florida, Appellee.
No. 47075.
Supreme Court of Florida.
February 25, 1977.
Rehearing Denied May 31, 1977.
Henry R. Barksdale of Barksdale, Murphy & Crongeyer, Pensacola, for appellant.
Robert L. Shevin, Atty. Gen., and Richard W. Prospect, Asst. Atty. Gen., for appellee.
OVERTON, Chief Justice.
This is a direct appeal from a retrial, upon remand, of a criminal contempt conviction. The proceeding commenced with a grand jury presentment that appellant had attempted to influence the action of its grand juror Jenny Rosenbaum, now Jenny Finman. This resulted in criminal contempt proceedings and a prior decision of this Court in Aaron v. State, 284 So.2d 673 (Fla. 1973) (hereinafter referred to as Aaron I). We there held a sentence of four months imprisonment could properly be imposed by the judge as trier of both law and fact, but reversed the trial court for its denials of appellant's motion to take the complaining grand juror's deposition and motion for a bill of particulars.
Retrial was held on June 17, 1974, before a judge who had not taken part in the previous proceedings. He made the following findings:
"THE COURT: Gentlemen, the Court very carefully listened to all of the testimony that has been presented here today and observed the candor and demeanor of each witness, including the Defendant, as he or she has taken the stand and has testified here. The Court finds beyond a reasonable doubt that the Defendant, Fred Aaron, is guilty as charged in the presentment of the Grand Jury to this Circuit Court as filed on the thirteenth day of August, 1970, as such presentment relates to the efforts of Fred Aaron to influence the vote of Jenny F. Rosenbaum, now Mrs. Jenny F. Finman, by attempting in a conference in her home, as alleged, to remind her of what should be her gratitude to Sheriff Bill Davis. By reminding her that the Grand Jury Room *642 was not beyond being bugproof; by reminding her that if anybody should be investigated, it should be one Mike Iaonne and not Sheriff Davis, and by reminding her that she was, in his judgment, a lady who had leadership and could lead other jurors in the course that it was desired that they should take in the matter under consideration with reference to Sheriff Davis, with the purpose and view on the part of Fred Aaron to pollute the streams of justice by hampering the investigation by the Grand Jury and by influencing the vote of said Grand Juror, and by attempting through her to have an influence upon such others on the Grand Jury as with whom she may have influence... ."
This appeal was transferred here by the District Court of Appeal, holding that the trial judge necessarily passed on the constitutionality of Section 38.22, Florida Statutes, which provides:
"Power to punish contempts.  Every court may punish contempts against it whether such contempts be direct, indirect, or constructive, and in any such proceeding the court shall proceed to hear and determine all questions of law and fact."
We relinquished jurisdiction to the circuit court to certify whether it passed on the constitutionality of the subject statute. The circuit court replied it had so ruled, and we therefore have jurisdiction.[1]
Appellant contends that the federal and state constitutions entitle him to a jury trial. He says our acknowledgement in Aaron I that "criminal contempt is a crime" brings trials of such contempts within Article I, Section 16, of the Florida Constitution, which provides:
"Rights of accused.  In all criminal prosecutions the accused shall ... have a speedy and public trial by impartial jury in the county where the crime was committed... ."
It is very similar to the jury trial requirement in the United States Constitution.[2]
For a long time, it was generally recognized that all courts had the inherent power to punish any contempt without the need for a jury trial. The United States Supreme Court recognized this common law power to punish for contempt without the necessity of a jury trial continuously since the early days of this country. See Green v. United States, 356 U.S. 165, 78 S.Ct. 632, 2 L.Ed.2d 672 (1958); Offutt v. United States, 348 U.S. 11, 14, 75 S.Ct. 11, 99 L.Ed. 11 (1954); Fisher v. Pace, 336 U.S. 155, 159-160, 69 S.Ct. 425, 93 L.Ed. 569 (1949); Ex parte Grossman, 267 U.S. 87, 117-118, 45 S.Ct. 332, 69 L.Ed. 527 (1925); Michaelson v. United States, etc., 266 U.S. 42, 67, 45 S.Ct. 18, 69 L.Ed. 162 (1924); Myers v. United States, 264 U.S. 95, 104-105, 44 S.Ct. 272, 68 L.Ed. 577 (1924); Ex parte Hudgings, 249 U.S. 378, 383, 39 S.Ct. 337, 63 L.Ed. 656 (1919); Gompers v. United States, 233 U.S. 604, 610, 34 S.Ct. 693, 58 L.Ed. 1115 (1914); Gompers v. Bucks Stove & Range Co., 221 U.S. 418, 450, 31 S.Ct. 492, 55 L.Ed. 797 (1911); Bessette v. W.B. Conkey Co., 194 U.S. 324, 337, 24 S.Ct. 665, 48 L.Ed. 997 (1904); Interstate Commerce Comm'n v. Brimson, 154 U.S. 447, 489, 14 S.Ct. 1125, 38 L.Ed. 1047 (1894); Eilenbecker v. Plymouth County, 134 U.S. 31, 36, 10 S.Ct. 424, 33 L.Ed. 801 (1890); Savin, Petitioner, 131 U.S. 267, 277, 9 S.Ct. 699, 33 L.Ed. 150 (1889); Ex parte Terry, 128 U.S. 289, 312-313, 9 S.Ct. 77, 32 L.Ed. 405 (1888). The statutory authority contained in Section 38.22, Florida Statutes, recognizes and is a restatement of this common law power and was first adopted by statute in this state in 1828. The purpose of the contempt power is to provide the trial court with the authority to enforce its orders expeditiously and efficiently, to maintain order and dignity in *643 court proceedings, and to punish acts which obstruct the administration of justice.
To adopt fully the position of appellant Aaron and require a jury trial for all criminal contempts would eliminate for practical purposes much of the contempt authority of a trial judge. It would bring the right of a jury trial into contempt proceedings in domestic relation matters, trial disruption incidents, violations of injunctive orders, and conduct which interferes with jurors and witnesses and the summary discipline of attorneys. Further, the contention of the appellant that he is entitled to a jury trial under circumstances where the punishment is four months imprisonment exceeds the holdings of recent decisions of the United States Supreme Court. See Cheff v. Schnackenberg, 384 U.S. 373, 86 S.Ct. 1523, 16 L.Ed.2d 629 (1966); Bloom v. Illinois, 391 U.S. 194, 88 S.Ct. 1477, 20 L.Ed.2d 522 (1968); Frank v. United States, 395 U.S. 147, 89 S.Ct. 1503, 23 L.Ed.2d 162 (1969); Codispoti v. Pennsylvania, 418 U.S. 506, 94 S.Ct. 2687, 41 L.Ed.2d 912 (1974). There was no right to a jury trial for criminal contempt until Cheff v. Schnackenberg, supra, was decided, and was applied to the states in Bloom v. Illinois, supra. In Cheff, the right to a jury trial was the principal issue. The defendant had been sentenced to six months imprisonment. The majority opinion upheld the contempt sentence, and denied the defendant a right to a jury trial. In affirming the trial court four Justices[3] expressed the view that when imprisonment was for more than six months it in effect constituted a serious crime and a jury trial was required, but when imprisonment was for not more than six months the judge could try the contempt without a jury. Two Justices[4] concurred in the result that no jury trial was required, adhering to the common law view that there was no right to a jury trial in any circumstance. Two Justices[5] were of the view that the right to a jury trial applied in any criminal contempt proceeding irrespective of the length of the punishment. One Justice[6] did not participate. In Bloom v. Illinois, supra, seven Justices applied the six-month rule to state court contempt proceedings, and two Justices held to their view that no jury trial was necessary.
In summary, the recent United States Supreme Court cases have now recognized a right to a jury trial for criminal contempt when imprisonment of more than six months is to be imposed, Bloom v. Illinois, supra, but they have denied the right to a jury trial when punishment is for no more than six months imprisonment, Cheff v. Schnackenberg, supra, or where the defendant is placed on probation, even if the probation period exceeds six months, see Frank v. United States, supra.
These recent holdings by the United States Supreme Court represent a moderate compromise solution which places a limitation on the common law inherent power of the trial judge but reserves to him sufficient authority to assure the proper administration of justice. Many views have been expressed recently because of these decisions and a substantial increase in trial disruption incidents.[7] In addition criminal justice standards have been adopted which recognize the summary six-month contempt power of the trial court.[8]
*644 We accept and adhere to the rule adopted by the United States Supreme Court and decline to extend a jury trial right to all criminal contempts. No further limitation upon the action of the trial judge is required constitutionally or otherwise.
The second error asserted by the appellant concerns the exclusion of certain grand jury testimony.
On retrial of the contempt, appellant sought to impeach the credibility of the grand juror Jenny Finman who was the State's key witness against him by asserting she had told him certain grand jury testimony. The grand juror Finman denied any such disclosure. It is unrefuted or established by the appellant Aaron's own testimony that he went to the grand juror Finman's home while the grand jury was in session, that he was at the time a deputy sheriff of the sheriff who was being investigated, and that he went there allegedly to tell her that an investigation concerning her deceased father was being terminated. Further, appellant Aaron during the course of the contempt proceedings attempted to state the substance of the testimony of a witness before the grand jury in order to show that the grand juror Finman had been his informant, but the trial judge disallowed the testimony. Appellant's counsel also requested the court to place parts of the transcript of grand jury testimony in evidence in the retrial to corroborate the proffered testimony of the appellant concerning the testimony of grand jury witnesses before the grand jury. The court allowed the appellant Aaron to identify witnesses who testified before the grand jury, but refused to allow the transcript of grand jury testimony to be placed in evidence. The judge assigned as a reason the need to protect the secrecy of these grand jury proceedings. Appellant contends the failure to admit this transcript in evidence was reversible error. We find no error. This was a sensitive grand jury investigation of a sheriff. Appellant in this case was charged with attempting to influence the vote of grand juror Finman. He in effect contends her asserted revelations to him reflect on her credibility, and impliedly suggests he, therefore, is guiltless on the charge of trying to influence this grand juror.
Assuming the proffered evidence of the grand jury was admitted and coincided with the information known by the appellant, such would not compel a finding that the grand juror Finman lied in her statement of nondisclosure. Nor would it, therefore, support an inference that she likely had lied concerning the statements of appellant's attempts at influencing her.[9] To so find, the court would had to have concluded that the appellant deputy sheriff could not have learned of the testimony from other sources.
On the facts of this case, appellant's allegation that grand juror Finman breached her duty only collaterally relates to his denial of attempted corruption[10] and would require an inference to be placed on an inference. Accordingly, the trial court was well within its discretion to refuse to admit the evidence. See 3A Wigmore, Evidence § 983 at 850 (Chadbourn rev. 1970); McCormick on Evidence § 42 (2d ed. 1972).
The finding of contempt by the trial judge that the appellant attempted to influence the grand juror is fully supported by this record. Clearly the act of attempting to influence a juror constitutes contempt of *645 court. See State ex rel. Franks v. Clark, 46 So.2d 488 (Fla. 1950).
There being no other meritorious allegations of error, the judgment and sentence are affirmed.
ADKINS, BOYD, ENGLAND, SUNDBERG, HATCHETT and ROBERTS (Retired), JJ., concur.
NOTES
[1] Art. V, § 3(b)(1), Fla. Const.
[2] The third paragraph of Article III, Section 2, of the United States Constitution, reads:

"The Trial of all Crimes, except in Cases of Impeachment, shall be by Jury; and such Trial shall be held in the State where the said Crimes shall have been committed; but when not committed within any State, the Trial shall be at such Place or Places as the Congress may by Law have directed."
[3] Chief Justice Warren, Justices Clark, Brennan and Fortas.
[4] Justices Harlan and Stewart.
[5] Justices Douglas and Black.
[6] Justice White.
[7] For articles collecting such authority on contempt, see Dobbs, Contempt of Court: A Survey, 56 Cornell L.Rev. 183 (1971); Patterson, Criminal Contempt: A Proposal for Reform Providing "The Least Possible Power Adequate to the End Proposed," 17 S.Dak.L.Rev. 41 (1972).
[8] The contempt power of the trial court has been recognized recently in ABA Standards for the Administration of Criminal Justice, The Function of the Trial Judge, Section 7.1 (1974), which prescribes:

"Inherent power of the court.
"The court has the inherent power to punish any contempt in order to protect the rights of the defendant and the interests of the public by assuring that the administration of criminal justice shall not be thwarted. The trial judge has the power to cite and, if necessary, punish summarily anyone who, in his presence in open court, willfully obstructs the course of criminal proceedings."
[9] We note that a defendant is not absolutely entitled to a transcript of the grand jury testimony of a victim for use for impeachment at the trial unless there is a showing of evidence favorable to the defendant in accordance with Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). See Minton v. State, 113 So.2d 361 (Fla. 1959); State v. Drayton, 226 So.2d 469 (Fla.2d DCA 1969); Walker v. State, 330 So.2d 110 (Fla.3d DCA 1976).
[10] Generally, a witness may not be impeached by evidence of prior acts of misconduct where there has been no conviction. Roberson v. State, 40 Fla. 509, 24 So. 474 (1898). See also Hubbard v. State, 37 Fla. 156, 20 So. 235 (1896).