RAWLS, Acting Chief Judge.
Did the trial court err in adjudging appellant Feldman to be in contempt of court?
While conducting an investigation of certain activities of State Insurance Commissioner Thomas O’Malley[1] in the Spring of 1974, Feldman was subpoenaed to appear before the Leon County Grand Jury. In June, 1974, after being granted immunity, Feldman testified before the grand jury about transactions and relationships over a period in excess of four years immediately *416 preceding the date of his appearance. Subsequently in August of 1974, Feldman met with “the state” in the offices of his attorneys and, during a two-day period, reviewed a multitude of legal matters and files and answered all questions put to him by the state. Pursuant to subpoena, Feld-man again testified before the Leon County Grand Jury in October of 1974,[2] and subsequent to this appearance furnished the state with additional records and documents. The grand jury indicted O’Malley in October, 1974, primarily upon material that dealt with the Feldman-O’Malley rela- . tionship. After indicting O’Malley, the grand jury subpoenaed Feldman for a third appearance before that body on February 26, 1975, specifically advising him that the state would not limit the questions to areas not covered in the two prior grand jury proceedings but, to the contrary, advised Feldman that it wished to reaffirm and resecure the same testimony given by Feld-man in his prior grand jury appearance in June 1974. Upon the advice of counsel that he would be subject to prosecution under Section 837.021, Florida Statutes,[3] Feldman refused to testify. The trial court denied Feldman’s motion to quash and granted the state’s motion to compel Feldman to testify.[4] Upon advising the trial court that he would not testify, Feldman was adjudged guilty of contempt and sentenced to jail for six months; hence this appeal.
With commendable candor, the state concedes that the decisions in Salem v. State, 305 So.2d 23 (Fla. 3rd DCA 1974), and Saunders v. State, 319 So.2d 118 (Fla. 1st DCA 1975), support a reversal. However, the state argues that these decisions are erroneous and that the better view is that espoused by the two dissenting opinions. We adhere to the views expressed by this court in Saunders and by our sister court in Salem.
A proper role of our grand juries is conducting an inquiry into alleged violations of the law. Grand juries were not established for the purpose of “whipsawing” a citizen into ultimately giving contradictory statements upon which the state could institute criminal charges against such citizen. The aphorism that one cannot take the Fifth Amendment on the ground that if he testifies he will perjure himself applies only to the excuse for not testifying *417 initially. United States v. Wilcox, 450 F.2d 1131 (5th Cir. 1971). However, the state and federal constitutional right against self-incrimination does not preserve an “absolute right of silence” to a witness in subsequent appearances before a duly constituted body. The witness must reveal a valid fear of being subjected to self-incrimination prior to being excused from testifying. As disclosed by this record, there is no doubt that such a valid fear existed on Feldman’s part. Unquestionably, there existed a substantial risk of prosecution growing out of prior testimony. See Brown v. State, 334 So.2d 597 (Fla.1976).
The judgment of conviction is reversed with directions that Feldman be discharged.
SMITH and ERVIN, JJ., concur.

. Feldman was the “purchaser” of a portion of O’Malley’s law practice.

. The state limited its inquires to matters not covered in his June, 1974, testimony.

. Feldman’s counsel argues that the title of this statute, Perjury by Contradictory Statement, is a misnomer, since it has little to do with common law “legal” perjury which requires a witness to willfully make a false statement; that on the contrary, this statute authorizes prosecution where a witness makes two “truthful” but contradictory statements.

. Feldman stated to the court:
“. . . [Sjince this proceeding started earlier this morning, when we appeared before Mr. Willis subject to his subpoena, and through the arguments here, sir, there is no doubt in my mind that there is an effort to find me to be reciting testimony or statemens [sic] which I cannot recite at this time because they may be in conflict with prior testimony and that should I do so, sir, they will prosecute me for making these conflicting statements.
“I am prepared to swear to this Court, sir, that in June, when I gave the original testimony it was the truth. I am prepared now to swear that as of June that testimony that I gave was the truth. I am prepared to go before the Grand Jury and give truthful testimony of all matters that I know outside the scope of what the State has already interrogated me on.
“I feel as though if the same questions were asked to me today as they were in June, some of my statements may conflict with those given in June and,. for that reason, I immediately subject myself to prosecution. I am not prepared to tell the State, the Grand Jury or Your Honor anything that is not the truth. I recognize that if I lie to anybody I am subjecting myself to perjury and there is no excuse for that.

“I am in a dilemna [sic], in the horns of a dilemna [sic]. As I just told the Court, I have never willfully — I have always told the truth, never said a word that was not the truth, and I recognize that if I do lie I am subject to perjury. If the Grand Jury and the State is willing to say, ‘Let us interrogate you about all of those matters’, relieve me of the potential conflict, ‘How do you remember those situations as of this date?’ Sir, I am prepared to go in' and testify all night but they are asking me now to confirm statements made in June of 1974, as of February of 1975 and, sir, I cannot do it in all good conscience because there are some matters which have come to my attention which will create some conflicting testimony.”