473 So.2d 748 (1985)
Jimmy Osmond STAVELY, Appellant,
v.
STATE of Florida, Appellee.
No. AT-298.
District Court of Appeal of Florida, First District.
June 28, 1985.
Rehearing Denied August 26, 1985.
*749 Glenna Joyce Reeves, Asst. Public Defender, Tallahassee, for appellant.
Jim Smith, Atty. Gen., and Richard A. Patterson, Asst. Atty. Gen., Tallahassee, for appellee.
PER CURIAM.
Stavely appeals from his new sentence entered upon the granting of his motion to correct the original sentence and from his judgment and sentence for the offense of direct criminal contempt, raising a number of issues,[1] some of which require discussion.
On July 28, 1980, appellant entered a negotiated plea of guilty to sexual battery and burglary. On September 9, 1980, the trial court imposed a sentence of 25 years, consisting of 15 years' imprisonment to be followed by ten years' probation on each count, to run concurrently. Thereafter, appellant filed a motion to vacate, set aside, or correct sentence pursuant to Rule 3.800(a) and/or Rule 3.850, Florida Rules of Criminal Procedure, under the authority of Villery v. Florida Parole and Probation Commission, 396 So.2d 1107 (Fla. 1981), which held that a term of imprisonment imposed as a condition of probation could not validly exceed one year. On June 14, 1983, the motion was granted, and appellant was resentenced to 25 years' imprisonment on each count, to run consecutively, with the trial judge retaining jurisdiction over the first half of the sentence. Stavely's request for an attorney at this hearing was not acted upon.
Two days later, on June 16, 1983, appellant's sentence was again vacated and set aside because the trial judge concluded that he could not retain jurisdiction over the case. The record indicates that appellant was not represented by counsel at the June 16 resentencing. Appellant was resentenced to 20 years' imprisonment on each count, to run concurrently. The trial judge's oral pronouncement of sentence did not conform to the written record of the sentence, which showed a term of 25 years' imprisonment on each count; however, on December 16, 1983, an order correcting sentence discrepancy was entered. The transcript of the sentencing hearing was corrected to show two concurrent sentences of 25 years each.

RIGHT TO COUNSEL AT VILLERY HEARING AND RESENTENCING
Appellant first contends that the trial court's denial of his affirmative request for appointed counsel at the Villery motion hearing and his subsequent resentencing denied him due process of law under the Fifth and Fourteenth Amendments to the United States Constitution. In Graham v. State, 372 So.2d 1363, 1366 (Fla. 1979), the court held: "[T]here is no constitutional requirement for the appointment of individual counsel for an application for post-conviction relief until a colorable or justiciable issue or meritorious grievance prima facially appears in the appellant's petition."
In the instant case, appellant's motion to vacate, set aside, or correct sentence did not on its face reflect a colorable or justiciable issue or a meritorious grievance. We therefore find that the appellant was not entitled to appointed counsel at his Villery *750 motion hearing. However, the appellant was entitled to be represented by counsel at the new sentencing once the Villery motion had been granted. In State v. Scott, 439 So.2d 219, 220 (Fla. 1983), the Florida Supreme Court held that, once it is determined that the sentence is illegal and the prisoner is entitled to a modification of the original sentence or the imposition of a new sentence, the full panoply of due process considerations attaches. The court further asserted that this was especially true in post-Villery correction of sentences. Accordingly, we reverse appellant's sentence and remand for resentencing after appointment of counsel.

INCREASED TERM OF IMPRISONMENT
Appellant's second contention is that the trial court erred in imposing an increased term of imprisonment after having properly vacated his previously-imposed split sentence. In Beech v. State, 436 So.2d 82, 83 (Fla. 1983), the court held: "In correcting a voidable order of punishment for a criminal offense a trial judge may impose a sentence of imprisonment no longer than the originally ordered combined period of incarceration and probation... ." The appellant, in the case sub judice, was resentenced to imprisonment for a period of time equal to the total of the period of imprisonment and probation originally imposed. The record does not show that the sentence was "imposed to retaliate" against the appellant for having pursued his rights. Beech at 85. We find no error in the trial court's imposition of an increased term of imprisonment.

CONTEMPT
At the June 14 Villery hearing and resentencing, the following exchange of words took place:
THE COURT: Since we resentenced him, he will automatically be sent back.
THE BAILIFF: Keep your comments to yourself.
THE COURT: Did you want to say anything to me?
THE BAILIFF: He feels like he wants to deal with you when he gets out.
THE DEFENDANT: No, sir, I didn't say that.
THE COURT: I will be sending a letter to the parole board with words to that effect.
At the June 16 resentencing hearing, the trial court told appellant that he was going to cite him for direct contempt for threatening the court. He appointed the public defender to represent appellant, stated that appellant "made the comment that you would see about me when you got out of prison," and found that appellant's conduct constituted contempt of court. He then allowed appellant to present evidence in mitigation. Appellant asserted that he had not made the statement recited to the court by the bailiff, but instead had said, "Man, I will never get out of prison." There was further discussion about the precise remark that appellant had made and whether appellant's version of the remark made sense in light of his earlier remarks. Upon inquiry by the judge it became clear that the bailiff was not present during the contempt hearing. Appellant was adjudged guilty of contempt and was sentenced to six months in the county jail to run consecutively to the burglary and sexual battery sentence.
Appellant argues that (1) the trial court erred in convicting him of direct criminal contempt when it never actually heard the "contemptuous" remark, and (2) if the appellant's remark did constitute indirect criminal contempt, he was denied due process of law.
Rule 3.830, Florida Rules of Criminal Procedure, provides in part: "A criminal contempt may be punished summarily if the court saw or heard the conduct constituting the contempt committed in the actual presence of the court."[2]
*751 In Saunders v. State, 319 So.2d 118, 124 (Fla. 1st DCA 1975), this court held:
As to appellant's contention that his "son-of-a-bitch" statement was outside of the court's hearing and thus not committed in the actual presence of the court, we again look at the record. The trial judge obviously heard an expletive which triggered his statement from the bench, "What did you say?" Again, the appellant did not respond to the opportunity to "... present evidence of excusing or mitigating circumstances... ." but chose to remain silent, even after the bailiff advised the court, "He called you a son-of-a-bitch." The court reporter had no difficulty in recording the profane statement by appellant. To hold under these facts appellant's conduct did not constitute direct contempt would invite anarchy in the halls of justice.
In Saunders, the trial judge made inquiry of witnesses to the contemptuous conduct in order to determine exactly what was said and afforded appellant the opportunity to respond or otherwise explain or deny what he had said. The court then sentenced the appellant for contempt. This court upheld the summary punishment.
In Ex parte Earman, 95 So. 755, 760 (Fla. 1923), the Florida Supreme Court held:
A direct contempt is an insult committed in the presence of the court or of a judge when acting as such, or a resistance of or an interference with the lawful authority of the court or judge in his presence, or improper conduct so near to the court or judge acting judicially as to interrupt or hinder judicial proceedings. This species of contempt may be punished at once and summarily by the court that is offended, in order to maintain its authority and dignity, but the punishment must be appropriate to the offense and not excessive. (emphasis added)
In the instant case, we find appellant's conduct was committed "so near to the court or judge acting judicially as to interrupt or hinder judicial proceedings" and therefore was a direct contempt governed by Rule 3.830. In the instant case, the trial court's attention was immediately directed toward the appellant's remark, and the judicial proceeding was interrupted.
Although we are not persuaded by appellant's argument that the event in question did not constitute direct criminal contempt, we find that the procedure employed at the hearing on the contempt charge was lacking in due process. The court stated "you made the comment that you would see about me when you got out of prison" by way of factual support for finding appellant in direct contempt. It is unclear from the record, however, whether in making this statement the court relied on the bailiff's statement to the court at the previous sentencing hearing or the court's own knowledge of appellant's statement. If the court relied on the bailiff's statement, and it appears probable that this was the case, in that the court inquired of the bailiff's whereabouts during discussion of appellant's alleged remark during the contempt hearing, the court erred in relying on that statement because on the day of the contempt hearing the bailiff was not available to be placed under oath and cross-examined with regard to what he said he heard. See generally Robbins v. Robbins, 429 So.2d 424, 429 (Fla. 3rd DCA 1983) (civil contempt; due process requires, among other things, that the court not accept unsworn statements as true and that defense be permitted to cross-examine) and State ex rel. Coody v. Muszynski, 404 So.2d 165 *752 (Fla. 5th DCA 1981) (greater procedural due process safeguards are involved in criminal contempt cases). If on the other hand, the judge was relying only on his own recollection, that should have been made clear. Because of this due process defect, we reverse the judgment and sentence for the offense of direct criminal contempt and remand for a new hearing.
Accordingly, the new sentence entered upon granting the appellant's motion to vacate, set aside, or correct sentence pursuant to Villery v. Florida Parole and Probation Commission, 396 So.2d 1107 (Fla. 1981), is vacated, and the judgment and sentence for the offense of direct criminal contempt are reversed. This cause is remanded for proceedings consistent with this opinion.
BOOTH and JOANOS, JJ., concur.
SHIVERS, J., specially concurs with written opinion.
SHIVERS, Judge, specially concurring.
I agree with my colleagues to reverse the judgment and sentence for the offense of direct criminal contempt. I concur with their disposition of the other points on appeal.
The testimony at the June 14 hearing was unsworn and no mention of a possible contempt charge appears in the record of that hearing. At the June 16 hearing, the trial judge appointed the public defender to represent the appellant on the contempt charge. The appellant's comment was found to be contemptuous. The appellant was then allowed to present evidence in mitigation. The record shows the following:
MR. STAVELY: I said, "Man, I will never get out of prison." That's what I said. And I didn't say it to the Bailiff. It was to myself. It was under my breath.
MR. MATHEWS: I believe the Bailiff did overhear something, and that  I think he said to the Court that he, Mr. Stavely, said he was going to take care of this later. Immediately after that was said, Mr. Stavely did deny making that statement at that time.
The bailiff who reported the alleged threat was not present at the contempt proceedings. The appellant was adjudged guilty of contempt.
The rule on "Direct Criminal Contempt," Fla.R.Crim.P. 3.830 provides:
A criminal contempt may be punished summarily if the court saw or heard the conduct constituting the contempt committed in the actual presence of the court. The judgment of guilt of contempt shall include a recital of those facts upon which the adjudication of guilt is based. Prior to the adjudication of guilt the judge shall inform the defendant of the accusation against him and inquire as to whether he has any cause to show why he should not be adjudged guilty of contempt by the Court and sentenced therefor. The defendant shall be given the opportunity to present evidence of excusing or mitigating circumstances. The judgment shall be signed by the judge and entered of record. Sentence shall be pronounced in open court.
Here, it appears that the trial judge did not hear the comments of the alleged contemnor. The judge asked the appellant if he wanted to say anything to the judge only after the bailiff remarked, "Keep your comments to yourself." The court reporter did not record any comments by the appellant immediately prior to this remark by the bailiff. The trial judge's question to the appellant, "Did you want to say anything to me?" does not indicate the judge had just heard a contemptuous remark by the appellant.
I distinguish this case from Saunders v. State, 319 So.2d 118 (Fla. 1st DCA 1975). That case is similar to the case sub judice in that the judge in Saunders did not hear the appellant's remark calling him a son-of-a-bitch. However, in Saunders, our court *753 determined that "the trial judge obviously heard an expletive which triggered his statement from the bench, `What did you say?'" The court reporter in Saunders had recorded:
THE COURT: Do you intend to answer the questions?
A Hell, no.
THE COURT: What was that again?
In the case sub judice, the judge's question to the appellant, "Did you want to say anything to me?" appears to have been triggered by the bailiff's remark to the appellant, rather than by the appellant's remark to the judge.
In Barr v. State, 334 So.2d 636 (Fla. 2d DCA 1976), the appellant appealed a six-month sentence for calling the trial judge a son-of-a-bitch. The appellate court reversed the judgment and sentence for contempt. At the appellant's sentencing for a robbery conviction and after he heard his sentence, "appellant uttered the words `son-of-a-bitch' towards the court." Id. The trial judge admitted that he did not hear the comment, but the bailiff and others in the courtroom did. The bailiff brought the matter to the court's attention. The appellant was then cited for contempt and had an additional sentence of five years imposed upon him. The court, after recess, set aside the judgment and sentence for contempt, conducted an evidentiary hearing, and found appellant guilty of direct criminal contempt. Appellant was sentenced to six months in the county jail. The appellate court held that since the judge had not heard the appellant's remarks there could be no direct criminal contempt. The court said, "If anything, appellant's utterances constituted `indirect' criminal contempt within the purview of Rule 3.840, RCrP, relating to actions outside the presence of the court." Id. at 637.
I agree to reverse the judgment and sentence for the offense of direct criminal contempt. I would remand the cause for proceedings under RCrP 3.840, the rule on indirect criminal contempt.
NOTES
[1] The issues on appeal are: (1) whether the trial court's denial of appellant's affirmative request for appointed counsel at his Villery hearing (Villery v. Florida Parole and Probation Commission, 396 So.2d 1107 [Fla. 1981]) and at his subsequent resentencing denied him due process of law under the Fifth and Fourteenth Amendments to the United States Constitution; (2) whether the trial court erred in imposing an increased term of imprisonment upon appellant after having properly vacated his previously-imposed split sentence; (3) whether the trial court erred in convicting appellant of direct criminal contempt, and, if appellant's remark constituted indirect criminal contempt, whether he was denied due process of law; (4) whether appellant's remark constituted contempt as a matter of law; and (5) whether a six-month sentence for direct criminal contempt constitutes cruel and unusual punishment. Appellant also asserted reversible error because the written order of judgment and sentence did not conform to the trial court's oral pronouncement. However, this discrepancy was corrected upon remand.
[2] Rule 3.830, Florida Rules of Criminal Procedure, concerning direct criminal contempt, provides:

A criminal contempt may be punished summarily if the court saw or heard the conduct constituting the contempt committed in the actual presence of the court. The judgment of guilt of contempt shall include a recital of those facts upon which the adjudication of guilt is based. Prior to the adjudication of guilt the judge shall inform the defendant of the accusation against him and inquire as to whether he has any cause to show why he should not be adjudged guilty of contempt by the Court and sentenced therefor. The defendant shall be given the opportunity to present evidence of excusing or mitigating circumstances. The judgment shall be signed by the judge and entered of record. Sentence shall be pronounced in open court.