584 So.2d 95 (1991)
Ronald W. JOHNSON, Appellant,
v.
STATE of Florida, Appellee.
No. 90-3268.
District Court of Appeal of Florida, First District.
July 29, 1991.
*96 Ronald W. Johnson of Kinsey, Troxel, Johnson & Walborsky, P.A., Pensacola, for appellant.
Robert A. Butterworth, Atty. Gen., Amelia L. Beisner, Asst. Atty. Gen., Tallahassee, for appellee.
PER CURIAM.
Appellant challenges an order adjudicating him to be in direct criminal contempt. We reverse.
Appellant is an attorney who was representing the defendant in a criminal case when he was held in direct criminal contempt of court under rule 3.830, Florida Rules of Criminal Procedure. The trial court noted in the order of contempt that it had seen and heard the unspecified conduct found to be contemptuous, but rather than specify such conduct in the order, the trial court attached portions of transcripts from two separate trials. The trial court indicated that the attachment was to serve as the court's recital of facts upon which the adjudication of guilt was based.
It is well-established that a finding of criminal contempt involves greater procedural due process safeguards than are required in cases of civil contempt. Pugliese v. Pugliese, 347 So.2d 422 (Fla. 1977). It has been said that a criminal contempt proceeding is "effectively criminal in nature and persons accused of [criminal] contempt are as much entitled to the basic constitutional rights as are those accused of violating criminal statutes." Aaron v. State, 284 So.2d 673, 675 (Fla. 1973) (footnote omitted), clarified, 345 So.2d 641 (Fla. 1977), quoted with approval, Andrews v. Walton, 428 So.2d 663, 665 (Fla. 1983). Given this heightened procedural due process standard, which is reflected in the language of the rule itself, we find the order failed to comply with the requirement of rule 3.830 that the judgment of guilt of contempt "shall include a recital of those facts upon which the adjudication of guilt is based" (emphasis supplied). A "recital" has been defined as a "retelling in detail; narration." American Heritage Dictionary of the English Language (New College Edition). In no sense can the trial court's reference to numerous pages of trial transcript be considered a narration or a retelling in detail. Failure to recite in the judgment those facts on which an adjudication of guilt is based requires reversal. Fisher v. State, 482 So.2d 587 (Fla. 1st DCA 1986); Osborne v. State, 430 So.2d 551 (Fla. 2d DCA 1983); Wells v. State, 487 So.2d 1101 (Fla. 5th DCA), appeal dismissed, 491 So.2d 281 (Fla. 1986).
We are aware of Saunders v. State, 319 So.2d 118 (Fla. 1st DCA 1975), in which this court held that the lower court's failure to include in the order of contempt a recital of facts upon which the adjudication of guilt was based did not require reversal because the facts were clearly set forth in the transcript contained in the record on appeal. We cannot say that the record in the case at bar obviates the need for a recital of facts. Furthermore, this court's subsequent decision in Fisher v. State, supra, renders Saunders of dubious authority, or, at the very least, limits the application of Saunders to the specific facts in that case. As noted above, this court held in Fisher that "technical error", such as a failure to recite in the judgment of contempt those facts upon which the adjudication of guilt is based, requires reversal. In O'Neal v. State, 501 So.2d 98 (Fla. 1st DCA 1987), this court reemphasized the six steps set forth in Fisher, including the recital of facts in the order of contempt, which the Fisher and O'Neal courts found were necessary to ensure due process.
The requirement in rule 3.830 that a written recital of the facts be made in the order of contempt cannot be dismissed as a mere technical matter, for it serves the important function, in a very practical way, of assuring compliance with the longstanding rule that the powers of contempt "be exercised with care and circumspection." State v. Clemmons, 150 So.2d 231, 234 (Fla. 1963). Many statutes and rules incorporate *97 the requirement of specific findings as a prerequisite to judicial action. An example is the requirement found in the sentencing guidelines rule that reasons for imposition of a departure sentence be reduced to writing. We think the explanation of the reasons for that rule is equally applicable to rule 3.830:
The alternative of allowing oral pronouncement to satisfy the requirement for a written statement is fraught with disadvantages which, in our judgment, compel the written reasons.
First, it is very possible, and in many instances very probable, that the [facts supporting contempt] plucked from the record by an appellate court might not have been the reasons chosen by the trial judge were he or she required to put them in writing. Much is said at a hearing by many trial judges which is intentionally discarded by them after due consideration and is deliberately omitted in their written orders.
Second, an absence of written findings necessarily forces the appellate courts to delve through sometimes lengthy colloquies in expensive transcripts to search for the reasons utilized by the trial courts.
* * * * * *
Lastly, the development of the law would best be served by requiring the precise and considered reasons which would be more likely to occur in a written statement than those tossed out orally in a dialogue at a hectic ... hearing.
Boynton v. State, 473 So.2d 703, 706-707 (Fla. 4th DCA), affirmed, 478 So.2d 351 (Fla. 1985), cert. denied, 475 U.S. 1029, 106 S.Ct. 1232, 89 L.Ed.2d 341 (1986), quoted with approval, State v. Jackson, 478 So.2d 1054, 1055-1056 (Fla. 1985).
Were it not for additional matters brought to our attention by appellant we might be inclined to simply reverse and remand to the trial court for entry of an order complying with rule 3.830. However, we perceive fundamental reasons why, in the interest of justice, the contempt proceedings against appellant should be terminated and appellant discharged. The record before us reveals that the trial court advised appellant that he was in direct criminal contempt after appellant, during trial of a criminal case, cross-examined an official of the sheriff's department about whether appellant's client had been advised that the client was faced with the possibility of a life sentence if found guilty on the charges against him. The trial court indicated to appellant at a bench conference that the eliciting of such testimony was in contravention of the trial court's ruling on a motion in limine, and that appellant would be held in contempt of court. The record before us, however, reveals that no motion in limine had been filed in the case being tried, and no order had been entered by the court prohibiting that line of questioning by appellant. Such a ruling and order had been made by the court earlier in a separate criminal case involving the same defense counsel  appellant  and the same prosecutor. Nevertheless, a ruling on a motion in limine has no authority outside the proceeding in which it is made.[1] Therefore, the transcripts in the record on appeal fail to show that appellant violated any order of the court for which he could be held in contempt when he pursued the above-described line of questioning.[2]
On the day following the above-described trial incident, the trial court conducted a proceeding wherein appellant was given an opportunity to present argument against an adjudication of contempt. At this hearing, the trial court stated that it also found as contemptuous appellant's request during the charge conference that *98 the jury be instructed on the sentence the defendant could receive if convicted as charged. However inappropriate the trial court may have found this request, it cannot be reasonably said that in making such a request the appellant engaged in "a course of conduct calculated to embarrass, hinder or obstruct the court in the administration of justice, or which is calculated to lessen its authority or its dignity." Ray v. State, 352 So.2d 110, 111 (Fla. 1st DCA 1977), cert. denied, 360 So.2d 1250 (Fla. 1978). Based on the record before us, we can perceive of no need or justification for the drastic recourse of imposing direct criminal contempt upon the attorney, as there was no need "to vindicate the authority of the court or to punish otherwise for conduct offensive to the public in violation of an order of the court." Pugliese, 347 So.2d at 424; Andrews v. Walton, supra.
The power of contempt is to be used to ensure orderly procedure and to preserve the authority of the court; it is not to be used to avenge personal affronts. Ray v. State, supra. Therefore, it is a rod to be used sparingly and to be used only when the immediacy or gravity of the questioned conduct precludes redress in some other fashion.
Appellant raises other issues regarding the procedures followed by the trial court, particularly with respect to the denial of a reasonable opportunity to present evidence in defense or mitigation of the contempt charge. In view of our disposition on the substantive issue, we find it unnecessary to address appellant's procedural points.[3]
Because the order on appeal does not contain a recital of facts upon which the adjudication of contempt was based, and because the record does not provide a sufficient factual basis for a finding of criminal contempt, we REVERSE the order of contempt and order the appellant discharged.
JOANOS, C.J., and SMITH and WIGGINTON, JJ., concur.
NOTES
[1] There is no showing that the court had entered any order of general applicability prohibiting the offending line of inquiry by all defense counsel in all cases. By so noting this absence, we are not suggesting the use of such an order, nor are we passing upon the propriety of any adjudication of contempt based upon a violation of such an order.
[2] We find it unnecessary to consider whether the trial court's ruling on the motion in limine was correct or not under the facts of the case in which it was entered, nor do we express any opinion whether a similar limitation on admissibility of evidence would be valid in the case being tried. It should be noted, however, that one charged with contempt cannot defend by showing that the order was erroneous. Health Clubs, Inc. v. State ex rel. Eagan, 377 So.2d 28 (Fla. 5th DCA 1979), appeal dismissed sub. nom. Cataldo v. Eagan, 383 So.2d 1191 (Fla. 1980); In re R. Elrod, 455 So.2d 1325 (Fla. 4th DCA 1984). However, a party may defend a charge of contempt by claiming that the order, which he is charged with violating, has been rendered without jurisdiction over the subject matter or parties or that the subject order transcends the power or authority of the court. In Re R. Elrod, supra. Had an order been rendered in the instant case ruling out the admissibility of evidence concerning sentence, then appellant would have been obliged to have obeyed it, regardless of whether or not the order was a correct statement of the law. See, Jamason v. State, 447 So.2d 892 (Fla. 4th DCA 1983), decision approved, 455 So.2d 380 (Fla. 1984), cert. denied, 469 U.S. 1100, 105 S.Ct. 768, 83 L.Ed.2d 766 (1985); Vizzi v. State, 501 So.2d 613 (Fla. 3d DCA 1986), rev. denied, 506 So.2d 1043 (Fla. 1987).
[3] We note, in passing, however, that the trial court also erred in fining appellant two thousand dollars for his contempt. In Aaron v. State, supra, the supreme court observed that the common law crimes of England are crimes in Florida under section 775.01, Florida Statutes. The Aaron court then concluded that "criminal contempt is a crime under Florida law," and it cited section 775.02 which provides that when no maximum punishment is prescribed, the maximum punishment shall not exceed one year imprisonment or a fine of five hundred dollars. 284 So.2d at 676. Because there is no specific punishment for criminal contempt prescribed in the law, section 775.02 is applicable. Accordingly, assuming for lack of an order stating that the trial court did not intend punishing more than one instance of contempt, the trial court erred in imposing a fine greater than five hundred dollars.