501 So.2d 98 (1987)
Jacob O'NEAL, Appellant,
v.
STATE of Florida, Appellee.
No. BM-260.
District Court of Appeal of Florida, First District.
January 20, 1987.
Jefferson W. Morrow and Raymond A. David, Jr., Jacksonville, for appellant.
Jim Smith, Atty. Gen., Tallahassee, Barbara Ann Butler, Asst. Atty. Gen., Jacksonville, for appellee.
SHIVERS, Judge.
Appellant Jacob O'Neal seeks review of a trial court judgment finding him in direct criminal contempt. The issue in this case is whether the trial court, in determining that O'Neal was in contempt of court, complied with the requirements for a trial judge making such a finding which are set out in Florida Rule of Criminal Procedure 3.830. We reverse.
On March 12, 1986, O'Neal appeared before Judge William Parsons for the purpose of determining whether he was insolvent so that a public defender could be appointed to represent him. The following colloquy, which forms the basis for the instant appeal, occurred immediately after the proceedings began:
PROCEEDINGS
MS. COREY: Jacob O'Neal, bottom of Page Five.
THE COURT: I'm going to inquire again into his resources. He had Parker, but I appointed Parker; didn't I?
MS. COREY: Yes, sir.
DEFENDANT O'NEAL: What you laughing at? Huh? You laughing at me? I'm talking to you.
THE COURT: What's this you want to say? Who are you talking to?
DEFENDANT O'NEAL: I'm talking to her.
Every time I come in here, she laughing at me. She fuck me around, that should be enough 

*99 THE COURT: Mr. O'Neal, I find you in contempt of Court, and I sentence you 
Do you wish to say anymore? Any explanation to the profanity, vulgarity?
DEFENDANT O'NEAL: Yeah, because she been intimidating me every since I been coming in this courtroom. What good's it going to do? It ain't never do no good because you ain't got no sense, either. Why don't you go back to Juvenile where you belong .. . you son-of-a-bitch ...
THE COURT: Sit him down and gag him. Sit him down and gag him. Put handcuffs on him. Sit him down and gag him. Use whatever force is necessary.
DEFENDANT O'NEAL: I already got more than I deserve, you know... .
You think you're doing something good, you better give me a life sentence, that's what you better do.
THE COURT: Do whatever it takes to gag him.
DEFENDANT O'NEAL: ... You lying as officer, you know you lie. You still report my probation, give me...
THE COURT: Is there anything else?
I sentence you to 6 months in the Duval County Jail for contempt.
Take him away. I also appoint, for purposes of appeal, the Public Defender's Office.
At this time, you may take him away.
The 6 months is to run consecutive to the sentence that I previously imposed.
Anything else?
MS. COREY: Not on this case.
DEFENDANT O'NEAL: Who's my Public Defender in the case?
MS. COREY: John Duggan, middle Page Three, 86-2116.
THE COURT: Mr. Duggan 
DEFENDANT O'NEAL: You fuck with me, you son-a-bitch... .
THE COURT: Mr. O'Neal, I find you in contempt again.
DEFENDANT O'NEAL: I don't give a damn.
THE COURT: I want him gagged and out of here, and I want him moved now.
DEFENDANT O'NEAL: You fuck with me 
THE COURT: Mr. Jacobs, we can continue as long as you want.
I want to serve him with indirect contempt and set him also for jury trial. I think I can do that.
MR. DOUGLAS: Judge, I think we need an Order to Show Cause  I'll let Miss Corey do that.
MS. COREY: Can we talk about it at recess? I'll talk to Mr. Douglas. (Thus the proceedings ended.)
The trial court judge sentenced O'Neal to six months in the Duval County Jail for his "violent vituperative tirade of profane and vulgar abuse to the Court." The contempt sentence was to run consecutively with a sentence which had previously been imposed on O'Neal.
The trial court judge failed to adhere to the procedures set out in Rule 3.830, Florida Rules of Criminal Procedure, which this court has acknowledged must "be followed in order to insure due process to the accused... ." Fisher v. State, 482 So.2d 587, 588 (Fla. 1st DCA 1986). In Fisher, we determined that Rule 3.830 requires the trial court to follow essentially six steps pursuant to an adjudication of contempt:
1. Direct criminal contempt may be punished summarily if the court saw or heard the conduct constituting the contempt committed in the actual presence of the court.
2. The judgment of guilt shall include a recital of those facts upon which the adjudication of guilt is based.
3. Prior to the adjudication of guilt, the judge shall inform the defendant of the accusation against him and inquire as to whether he has any cause to show why he should not be adjudged guilty of contempt by the court and sentenced therefor.
4. The defendant shall be given the opportunity to present evidence of excusing or mitigating circumstances.

*100 5. The judgment shall be signed by the judge and entered of record.
6. The sentence shall be pronounced in open court.
482 So.2d at 588. It is the trial court's failure to follow steps 3 and 4 which mandates reversal. The State maintains that the following remarks made by Judge Parsons indicate that "the judge inquired and permitted the defendant an opportunity to explain the outburst":
Do you wish to say anymore? Any explanation to the profanity, vulgarity?
The above remarks fail to bring the trial judge's handling of O'Neal's contempt adjudication into conformity with Rule 3.830. First, the trial judge did not inform O'Neal that he was being charged with contempt; he stated in conclusory terms that he had already found O'Neal guilty of the crime. Judge Parsons' brief offer to allow O'Neal a chance to explain his profanity occurred after the judge had communicated to O'Neal that the sentence for contempt was a foregone conclusion. This was contrary to the directive contained in Rule 3.830 that "[p]rior to the adjudication of guilt the judge shall inform the defendant of the accusation against him and inquire as to whether he has any cause to show why he should not be adjudged guilty of contempt by the Court and sentenced therefor." (emphasis added) The foregoing language indicates that before a party is adjudged in contempt of court, he must be put on notice of what the consequences of his words or actions are about to entail so that he may avert those consequences by explaining his conduct. By telling O'Neal that he had already been found guilty of contempt, the trial judge effectively prevented him from exercising his right under Rule 3.830 to show why he should not be adjudged guilty of the crime. O'Neal was foreclosed from explaining himself because the tenor of the judge's remarks suggest that any such explanation would be futile. Judge Parsons also failed to give O'Neal an opportunity to present evidence of excusing or mitigating circumstances, and this failure also contradicts Rule 3.830.
The State characterizes O'Neal's appeal as merely "allegations of procedural irregularity." But greater procedural due process safeguards are involved in criminal contempt cases. State ex rel. Coody v. Muszynski, 404 So.2d 165 (Fla. 5th DCA 1981); see also Stavely v. State, 473 So.2d 748, 751 (Fla. 1st DCA 1985). In sum, the trial court's failure to comply with Rule 3.830's procedural directives mandates that O'Neal's judgment of contempt be reversed. Berman v. State, 253 So.2d 144 (Fla. 3d DCA 1971); Krathen v. State, 310 So.2d 381 (Fla. 4th DCA 1975).
MILLS, J., concurs.
JOANOS, J., dissents with written opinion.
JOANOS, Judge, dissenting.
There is no question that the behavior of the appellant was sufficient to warrant an adjudication of direct criminal contempt. Given the unexpectedness of the occurrence and the extreme behavior involved, my view of the record is that there was substantial compliance with Florida Rule of Criminal Procedure 3.830 so as to require affirmance.
While the trial judge, during the excitement of the event, did state that he was finding appellant in contempt before he requested an explanation, nothing was in concrete at that point. The mistake was still correctible. The proceeding was not over. There was no signed judgment or sentence. Had the appellant given a reasonable explanation for his behavior, there is no reason to expect that the trial judge would have ignored it. Instead, the appellant committed further acts of direct criminal contempt.
Trial judges, when surprised with such unusual behavior, should not be expected to act with perfection. They need only be fair and just. I see nothing in this record reflecting unfairness or injustice.