W. SHARP, Judge,
dissenting.
I respectfully dissent. Riggs petitions this court for certiorari review of the decision of the circuit court (sitting in its appellate capacity), which affirmed a county court’s adjudication holding him in direct criminal contempt and sentencing him to serve ten days in jail. We have jurisdiction.[1] Because I do not think the county court followed Florida Rule of Criminal Procedure 3.830, and because I do not think the act complained of (wearing a T-shirt with a vulgar slogan in traffic court) by itself can constitute criminal contempt, as a matter of substantive due process, I conclude that the circuit court departed from the essential requirements of law,[2] in affirming the contempt adjudication. I would grant the writ and quash the decision below.
The record in this case is sparse but what happened in the county court is substantially clear. Riggs and his attorney (Ms. Friedrich) appeared on a traffic charge, on June 11, 1990. Riggs apparently requested a trial date. After the judge concluded that business, Riggs and his attorney stepped over to the clerk’s desk to obtain a trial date. The prosecutor called the next case and the judge addressed the next defendant.
At that point, the judge (apparently for the first time) noticed the writing and picture on the T-shirt Riggs was wearing. The judge called Riggs back before him and inquired: “On the shirt, what does it say?” Riggs replied, “Hauling Ass!” The judge replied: “Do you think that’s funny?” Apparently unaware that he had offended the judge, Riggs replied: “Love it.”
Riggs’ T-shirt depicted four women in the back of a pickup truck. They were wearing thong-type bikini’s, with their bare buttocks hanging over the edge of the truck. Inscribed beneath were the two words, “Hauling Ass.”
The court responded: “Four women in the back of a pickup truck with their butts hanging out, and it’s saying ‘Hauling Ass’.” Riggs realized then that he was in trouble. He explained: “That’s just the way I dress.”
At that point, the direct criminal contempt proceeding began:
THE COURT: I don’t think this is funny. First, I’m going to inform you I’m going to hold you in direct criminal contempt of court, o.k.? And ah ... for coming to Court with a tee shirt that says ‘Hauling Ass’ with four naked butts on it, o.k.?
RIGGS: I forgot to change it, your Hon- or.
THE COURT: (Inaudible) I know why you do the stuff you do. (Inaudible) I must be ...
RIGGS: (Inaudible)
THE COURT: I must be cursed with this type of thing.
Riggs’ attorney interposed concerning the proper application of the criminal rules. The Court loaned her a copy of rule 3.830.
THE COURT: Sir, I’ve already decided that for which I’m going, how to treat you (inaudible). I’m now going to ask you to show how why you should not be adjudicated guilty of contempt of court (inaudible). It’s a rule, it’s rule 3.830, Ms. Friedrich.
Friedrich argued that Riggs’ T-shirt was clearly vulgar and in poor taste, but he had not exposed himself, nor had he meant to offend the court. Riggs offered to cover the T-shirt but the court proceeded on *1021 wards, if somewhat out of order, under rule 3.830.
THE COURT: I find you guilty. I will now give you an opportunity to excuse or mitigate the circumstances surrounding the offense ... opportunity to excuse or mitigate.
RIGGS: I got like three clean shirts left. Besides the one shirt clean and no pants that can match.
Riggs explained he holds down three jobs, and has to change between each one. Friedrich suggested Riggs had put the T-shirt on, not realizing what it said. Riggs added he tried walking (to court) but it was hot.
The court rejected Friedrich’s poor taste argument, as well as her free speech argument. He adjudicated Riggs guilty of contempt and proceeded on to sentencing.
The judge asked Riggs if he had ever been sent to jail. Riggs admitted he had been arrested for dealing in stolen property, but had not been adjudicated. He successfully completed two years on probation and paid off all his fines.
The court seized upon Riggs’ prior criminal record as the reason for the ten-day sentence: “You have a prior record of being on the felony probation for dealing in stolen property. You’ve been in contempt of court (inaudible) obstruction due administration of justice. Adjudication; 10 days in the county jail.”
Riggs protested that he would lose his three jobs if he served ten days in jail. Relenting somewhat, the judge directed the prosecution to nolle prosequi Riggs’ traffic offense.
In a form order signed by the judge, the reasons for the adjudication of contempt were given as: “prior felony — shirt w/hau-lin Ass on shirt.” Nothing in the order, or expressed in court addressed whether Riggs wore the T-shirt with the intent to upset or disrupt the court proceedings. Nothing in the record suggests Riggs shirt, in fact, had that effect.
I. PROCEDURAL DUE PROCESS
Both kinds of criminal contempt (direct and indirect) involve criminal proceedings which may result in jail terms and/or fines. Persons being so charged are entitled to the safeguards of the basic constitutional rights available to all criminal defendants charged with the violation of criminal statutes. Andrews v. Walton, 428 So.2d 663 (Fla.1983). It is essential that a judge carefully follow the contempt rules because they embody essential prerequisites of due process.[3]
For direct criminal contempt proceedings, the court must follow Florida Rule of Criminal Procedure 3.830 which states:
A criminal contempt may be punished summarily if the court saw or heard the conduct constituting the contempt committed in the actual presence of the court. The judgment of guilt of contempt shall include a recital of those facts upon which the adjudication of guilt is based. Prior to the adjudication of guilt the judge shall inform the defendant of the accusation against him and inquire as to whether he has any cause to show why he should not be adjudged guilty of contempt by the Court and sentenced therefor. The defendant shall be given the opportunity to present evidence of excusing or mitigating circumstances. The judgment shall be signed by the judge and entered of record. Sentence shall be pronounced in open court.
The court in this case roughly followed the rule in most regards. But there are two omissions or departures which in my view, invalidate the adjudication of contempt. The first is the rule’s requirement that the judgment include a recital of those facts “on which the court relies to establish the defendant’s guilt.” There is no finding of fact in the court’s judgment that Riggs intended to insult the court or disrupt the *1022 proceedings. When circumstances alone are used as the basis for contempt, and where the intent of the defendant is unclear and lack of intent is expressed by him, such a finding is essential. See Stevens v. State, 547 So.2d 279 (Fla. 5th DCA 1989); State v. Butter, 546 So.2d 1171 (Fla. 3d DCA 1989); Harmon v. State, 445 So.2d 349 (Fla. 3d DCA), rev. denied, 453 So.2d 45 (Fla.1984); Thomson v. State, 398 So.2d 514 (Fla. 2d DCA 1981).
The second error is that the court first adjudicated Riggs of contempt and found him guilty before notifying him he was being charged with the offense of criminal contempt. Only after the judge adjudicated Riggs guilty did he then permit Riggs and his attorney to explain or try to mitigate. The judge got the sequence backwards. That requires a reversal. See Walker v. State, 559 So.2d 1164 (Fla. 4th DCA 1990); State ex rel. Garlovsky v. Eastmoore, 393 So.2d 567 (Fla. 5th DCA 1981).
This case is very similar to what occurred in O’Neal v. State, 501 So.2d 98 (Fla. 1st DCA 1987). In O’Neal, the court first said: “... I find you in contempt of court ...” and then asked for an explanation of the defendant’s vulgar language which had been directed at a person present in the courtroom who defendant claimed was laughing at him. The defendant then spewed even more vile language at the judge. However, the appellate court held that the rule had to be strictly followed: put defendant on notice first, and allow an explanation; adjudicate second.
II. SUBSTANTIVE DUE PROCESS
A person can be held in direct criminal contempt of court if some act or speech engaged in by that person before the court disrupts the court proceedings, or constitutes disobedience of the court’s orders, or directly attacks or insults the court.[4] None of those things occurred here. Riggs was not disruptive. His case had been completed when the judge called him back to read his T-shirt. Riggs did not disobey an order of the court not to wear that T-shirt or any other shirt. In fact, Riggs asked permission to cover it when apprised of the judge’s anger. The language used on the T-shirt was vulgar and in gross taste, but it was intended to be a humorous pun. It was not a direct attack on the judge.
In this type of case where the wearing of a vulgar T-shirt is made a criminal act, more than the mere wearing of the shirt is required. It should be shown and so found by the judge that the wearer violated a prior court order and then acted wilfully and in defiance of the court. Or, it should be shown and proven in the record that the defendant consciously intended to upset and defy the court by wearing the shirt. No such finding was made and the record supports a contrary conclusion: Riggs apologized; explained he had no other clean shirt to wear; and, he even offered to cover it. See Sewell v. State, 443 So.2d 164 (Fla. 1st DCA 1983).
In my view, the mere fact Riggs wore the offensive T-shirt into traffic court when requesting a trial date does not constitute direct criminal contempt. That act simply does not rise to the level of conduct which has been held to violate the dignity and decorum of the court. Rather, the judge should have warned Riggs not to wear such a garment in his courtroom again, or suffer contempt consequences. See State v. Havelka, 285 S.C. 388, 330 S.E.2d 288 (1985); People v. Watts, 66 Ill.App.3d 971, 23 IlLDec. 659, 384 N.E.2d 453 (1978).
Without a finding of intent to insult or disrupt, based on the record facts, pursuant to Eaton v. City of Tulsa, 415 U.S. 697, 94 S.Ct. 1228, 39 L.Ed.2d 693 (1974), the mere use of foul language in court (or as in this case the presence of a foul picture with a foul pun), cannot, as a matter of substantive due process, constitute criminal contempt. The United States Supreme Court so held in Eaton when a defendant in municipal court called his assailant “chicken shit.” The Supreme Court pointed out that (as in Riggs’ case) no disobedience of a court’s order was involved; no loud or boisterous behavior of speech was involved; nor did the defendant’s speech pose an imminent or serious threat to the administration of justice.
*1023 The criminal contempt power should be used cautiously and sparingly.[5] It should be limited to those instances in which the speech or act is calculated to hinder, embarrass, delay or obstruct justice,[6] and affect a mind of reasonable fortitude. Judges must be persons of ordinary firmness of character and mind.[7] They must not shock or pale too easily. In my view, this record fails to demonstrate direct criminal contempt.

. Art. V, § 4(b)(3), Fla. Const.; Fla.R.App.P. 9.030(b)(2)(B).

. See Combs v. State, 436 So.2d 93 (Fla. 1983); Baltrus v. State, 571 So.2d 75 (Fla. 4th DCA 1990).

. White v. Buck, 505 So.2d 36 (Fla. 5th DCA 1987); Wells v. State, 487 So.2d 1101 (Fla. 5th DCA), appeal dismissed, 491 So.2d 281 (Fla.1986); Kahn v. State, 447 So.2d 1048 (Fla. 4th DCA 1984); Holden v. State, 380 So.2d 548 (Fla. 2d DCA 1980); Keezel v. State, 358 So.2d 247 (Fla. 4th DCA 1978); Vines v. Vines, 357 So.2d 243 (Fla. 2d DCA 1978); Ray v. State, 352 So.2d 110 (Fla. 1st DCA 1977), cert. denied, 360 So.2d 1250 (Fla.1978); Simkovitz v. State, 340 So.2d 959 (Fla. 3d DCA 1976).

. See 17 Am.Jur.2d, Contempt §§ 1, 2, 8 (1990).

. Litus v. McGregor, 381 So.2d 757 (Fla. 5th DCA 1980); Mann v. State, 476 So.2d 1369 (Fla. 2d DCA 1985); Kreuger v. State, 351 So.2d 47 (Fla. 3d DCA 1977); 11 Fla.Jur.2d, Contempt § 4 (1979).

. Clein v. State, 52 So.2d 117 (Fla.1950).

. Ex parte Biggers., 85 Fla. 322, 95 So. 763 (1923).