EVANS, V.W., Jr., Associate Judge.
Appellant, Charlotte Stevens, appeals from an order adjudicating her in indirect criminal contempt of the court and sentencing her to 48 hours’ imprisonment in the county jail. We reverse.
Stevens was employed by the Department of Health and Rehabilitative Services (HRS). She was Supervisor of Unit 13 in Volusia County and on September 3, 1987, accepted service of a subpoena duces te-cum which was issued in the following words and phrases:
“You are hereby required to summon HRS Counselor, HRS, 1023 Mason Ave., Daytona Beach, FI. Bring any and all records and documents on [K ... L ...] (DOB 8/27/80) and [B ... L ...] by September 8, 1987, personally to be and appear before the Assistant State Attorney Laura Vaughan for the Seventh Judicial Court of the State of Florida, at 119 S. Palmetto Ave., Daytona Beach, Fla.,- 1987, at _ o’clock _ M., * * * * ))
The Appellant was not the custodian of the records but did have access to the records room. Notwithstanding, she accepted the subpoena from the Sheriff and undertook responsibility for compliance. She first called the State Attorney’s office to determine if personal appearance was required or if the records could be produced through use of the court mail and was advised that the latter was satisfactory. She then undertook to locate the records and after doing so and reviewing them concluded that they were what are referred to as unfounded records that should have *280 been destroyed at an earlier time under applicable law governing disposition of such unfounded records.
Appellant testified that she had never received a memo or verbal instructions on exactly what to do if unfounded records were requested. She testified that she was told that they should be destroyed but they had not been and were maintained separately and that she hadn’t gotten any information on what procedure to take with respect to destroying the records, and that was the reason they were kept in a separate place. On September 8, 1987, the day the records were to be produced to the State Attorney, the appellant made efforts to reach the Assistant State Attorney. Vaughan but was unable to get through to her and ultimately left a message at the State Attorney's office. The only dispute in the evidence relates to the message left by appellant. The legal secretary that talked to the appellant testified that the message from appellant was to the effect that the records subpoenaed had been destroyed. Appellant testified that her message was that the records should have been destroyed.
The appellant testified that her failure to produce the records was not done with any intent to obstruct the State Attorney’s office or the court in the administration of justice in juvenile proceedings and that she had no intent to hinder the State Attorney in an investigation or to do anything other than to comply with what she thought were proper procedures governing unfounded records. Finally, in response to the court’s questions the appellant admitted that she made the decision that led to her present predicament because, as she said to the court: “I did not provide them because I sincerely believed that they were under the law of — should have been destroyed within 30 days and that they were not available under the intent of-.”
Assistant State Attorney Vaughan acknowledged that she was aware of appellant’s telephone message and there is no indication in the record that she ever returned appellant’s call. Had she done so, this entire misunderstanding would most likely have been avoided. Attorney Vaughan also expressed having some rather vague knowledge of the records destruction requirements in juvenile cases but indicated that that was not her area of responsibility. She also testified that she did not excuse HRS or the appellant from compliance with the subpoena and that the records were not produced by either HRS or the appellant on September 8, 1987. The subpoenaed records were, however, produced by HRS on November 2, 1987. The order to show cause hearing on the charge of indirect criminal contempt against appellant was held on December 3, 1987.
The appellant has not raised any issue as to appellant’s duty vel non with regard to subpoena compliance in a situation where the subpoena was not directed to her personally. Inasmuch as the appellant has not raised this potential issue, we will not deal with it further except to note that there is a dearth of law in Florida on this question.
The evidence taken in the light most favorable to the appellee, State of Florida, is insufficient as a matter of law to support the adjudication of indirect criminal contempt and resulting sentence of imprisonment of two days in the county jail. The courts of this state have consistently held that criminal contempt requires some willful act or omission calculated to hinder the orderly functions of the court. Sewell v. State, 443 So.2d 164 (Fla. 1st DCA 1983). Also, an act which is calculated to embarrass, hinder or obstruct the court in the administration of justice or which is calculated to lessen its authority or dignity constitutes a contempt, and further intent is an essential element of contempt. Thomson v. State, 398 So.2d 514 (Fla. 2d DCA 1981).
In Krueger v. State, 351 So.2d 47 (Fla. 3d DCA 1977), Ray v. State, 352 So.2d 110 (Fla. 1st DCA 1977), and Ex parte Biggers, 85 Fla. 322, 95 So. 763 (1923), cited approvingly by this court in Litus v. McGregor, 381 So.2d 757 (Fla. 5th DCA 1980), it was held that “If the matter complained of as constituting contempt, when fairly interpreted, does not have a reasonable tenden *281 cy to degrade, or to embarrass or hinder a judge in performing his own duty, or to affect a mind of reasonable fortitude, it is not a criminal contempt for which imprisonment may be lawfully adjudicated particularly when an intent to offend is denied on oath.” [Emphasis added].
The evidence in this case does not measure up to this standard and does not support the judgment. The order adjudicating contempt is therefore
REVERSED.
ORFINGER, J., concurs.
DANIEL, C.J., dissents without opinion.