FARMER, C.J.
Jury duty is a badge of citizenship. It is also the cornerstone of our system of jus *771 tice. If citizen jurors can avoid this duty with impunity, the system would be compromised and justice denied. In presiding over the selection of jurors, trial judges are engaged in a highly sensitive exercise. They must balance the need for those citizen jurors summoned to do their duty, against an understandable distaste for imposing extraordinary sacrifice on any individual thus called.
We recognize the problem inherent in punishing jurors. We also recognize, however, the importance of enforcing this citizen duty. If jurors can successfully use the processes of jury selection to work an improper avoidance of duty, few will answer the call to serve. If that should happen, every citizen would be the loser.
Today we affirm the conviction of a recalcitrant juror for direct contempt of court. We have no hesitancy in upholding the trial judge’s handling in this case and commend her attention to detail and fairness in so doing. Because an opinion could rightly serve as a deterrence against the few who would abuse this privileged duty of jury service, we offer this opinion.
Gruss was summoned for jury service, called to appear, and was sworn to answer questions on her voir dire truthfully. After the first group of jurors, which included Gruss, was excused and ordered to return the next day, Gruss asked a court deputy if she could address the Court.
Gruss told the trial judge that it would be a hardship to return the next day because of business commitments. The judge responded that any hardship would not be “undue”. As what followed forms the basis for the criminal contempt finding, we set it out in full:
GRUSS: I am the only one who does this. I do the recruiting, I have appointments tomorrow that I have to be at.
JUDGE: What kind of appointments?
GRUSS: Interview. Hires. Orientation and then interview.
JUDGE: Ma’am, you got your notice. It said you’re here for trial.
GRUSS: Okay, fine, then my feelings have changed. I don’t think I can give an unbiased opinion.
JUDGE: You understand you took an oath today?
GRUSS: Yes, as long as you think about it, if your feelings change throughout, you can change your mind.
JUDGE: Do you understand what you just did when I would not excuse you for those reasons, ma’am? You just all of a sudden said okay, well that doesn’t work. I guess I can’t be fair. I would like for you to tell me why I shouldn’t hold you in contempt of this court.
GRUSS: I am sorry. I just don’t think I could be fair. I really need to be—
After scrupulously complying with the procedural requirements for direct criminal contempt of court, the judge found her in contempt and ordered her to write a letter of apology and return to court the next day to read it to the jurors after which time she would be excused. After-wards, the judge commented:
“that was just so blatant I just couldn’t let it go.... Her demeanor was so defiant, obnoxious, I just could not let — I’ve never done that, but I could not let that pass — her disrespect to this Court, to these proceedings and to everybody who’s involved.”
The trial judge properly found that Gruss was attempting to manipulate the process to achieve a release from this most important of duties — a release that had just been denied on the merits. Rather than accepting the trial judge’s decision, which was supported by competent evi *772 dence, the juror in waiting changed her answers relating to bias and prejudice, simply to avoid her duty. In finding this conduct contemptuous, the trial judge had an adequate record on which to base her finding. There is no error in this regard.
AFFIRMED.
GROSS and TAYLOR, JJ., concur.