933 So.2d 706 (2006)
Stacey FORBES, Appellant,
v.
STATE of Florida, Appellee.
No. 4D05-1554.
District Court of Appeal of Florida, Fourth District.
July 26, 2006.
*708 William Gelin of Tribune Legal Services, LLC, Fort Lauderdale, for appellant.
Charles J. Crist, Jr., Attorney General, Tallahassee, and Joseph A. Tringali, Assistant Attorney General, West Palm Beach, for appellee.
TAYLOR, J.
Stacey Forbes, a prospective juror, was found guilty of criminal contempt and sentenced to four months in the Broward County Jail for responding untruthfully to a written questionnaire concerning prior arrests and failing to disclose a pending criminal charge during jury selection. He appeals the contempt judgment on procedural grounds and challenges the sufficiency of the evidence to support his adjudication and punishment for criminal contempt. We affirm.
Nineteen-year-old Stacey Forbes was summoned for jury duty. He appeared at the Broward County Courthouse and was sworn for voir dire in a criminal case. Before questioning each juror individually, the court asked the prospective jurors to raise their hands if they had any pending criminal charges; no one did. The court then asked each juror to respond verbally to a written questionnaire. The court advised the venire to "err on the side of caution" if they were uncertain what the questions required, and told the jurors that they could request a private meeting *709 if they were embarrassed about sharing certain information.
Appellant was the first member of the venire to be called upon to respond to the written questionnaire. Question 15 asked: "Have you or any member of your family ever been arrested?" Appellant read the question aloud: "And have you ever been a member  anyone in your family been arrested? No." Appellant was not corrected on his misreading of Question 15 nor questioned further about his response by either the state or the defense.
After both parties questioned the prospective jurors and selection began, the state alerted the court that it had discovered that appellant had a prior juvenile arrest and a pending criminal charge. The state moved to strike appellant for cause. The court said that "if he's been less than candid with this court, he's not leaving today."
The court then called appellant into the courtroom, where the following exchange took place:
Court: Do you read and write English?
Forbes: Yes.
Court: And you read the form, the questionnaire, am I right?
Forbes: Yes.
Court: And you answered yes  and you answered no to question number fifteen, have you or any member of your family ever been arrested?
Forbes: Yes.
Court: Well, do you have anything else you'd like to tell us?
Forbes: I got arrested for possession of marijuana.
Court: What else?
Forbes: That's it.
The court reminded appellant that before questioning the jurors individually, it asked them to advise the court if they had any pending criminal charges. The court asked him:
Court: How about earlier on, when I asked everyone on qualifications to be a juror, does anyone have any charges pending against them. Remember that question?
Forbes: I didn't  I wasn't familiar, 'cause 
Court: When I asked everybody about their lawful  about their legal qualifications to be on a jury? Remember I asked everybody if you're over the age of eighteen, citizen of the United States, resident of this county, and then one of the other questions I asked was whether you have any criminal charges pending against you; do you remember that?
Forbes: Yes.
....
Court: So it's clear, that you do have charges pending against you  felony charges; is that right?
Forbes: I got arrested.
Court: Yeah. For? Possession of more than twenty grams of marijuana; right?
Forbes: Yeah.
Court: Okay. And that's a felony charge. So you have felony charges pending against you; correct?
Forbes: Yes.
When the court reminded appellant that the questionnaire also asked if any family member had ever been arrested, appellant initially said "Nobody in my family," but then added, "My dad, yeah." Appellant seemed confused when the court told him that they had discovered that he had been arrested twice. He asked, "Twice?" Whereupon, the court said:
You know what, I've had enough of him. Put him in the back of the courtroom. You're not leaving.
*710 After striking appellant for cause, the court ordered him to remain in the back of the courtroom for a contempt proceeding. Later, the court asked appellant if he could afford a lawyer, explaining that there would be a direct criminal contempt proceeding. Appellant asked to call his mother to see if she could help him find a lawyer. The court deputy later advised the court that appellant's mother was unable to obtain an attorney for appellant.
Shortly thereafter, the court advised appellant that it was holding direct criminal contempt proceedings for perjury, for lying to the court under oath regarding his past criminal record, prior arrests, and his dad's prior arrest. The court asked appellant to explain why he did not answer truthfully when asked about pending charges and prior arrests. Appellant explained:
Okay. Well, Your Honor, honestly, truthfully, why this happened is because I was kind of nervous when I was reading the paper and I didn't get to read it like fully. I didn't no [sic] it required it, so I said no. But I'm sorry for all this disrespect I brung [sic] to your courtroom and for the holdup. I didn't intentionally meant [sic] for that to happen.
When the court asked appellant why it should not hold him in contempt, he responded:
Honestly, I have poor reading skills.
I didn't get to finish high school, so  well, that particular question you read out loud, nice and clear, I didn't understand it that well.
The court allowed appellant an opportunity to present mitigating factors regarding a sentence. It then found beyond a reasonable doubt that appellant knowingly lied under oath to the court regarding his individual and family arrest history and his current criminal charge. The court held him in direct criminal contempt of court and sentenced him to four months in the Broward County Jail. Later, the court issued a written order reciting the facts and finding beyond a reasonable doubt that appellant knowingly lied under oath.
Appellant challenges the contempt judgment on both procedural and substantive grounds. As to procedure, he argues that the trial court erred in holding direct criminal contempt proceedings under rule 3.830 of the Florida Rules of Criminal Procedure, instead of indirect criminal contempt proceedings under rule 3.840. Consequently, he was denied the greater due process rights afforded by rule 3.840. He further argues, on substantive grounds, that the evidence was insufficient to support his conviction and sentence for criminal contempt.
Criminal contempt is "[a]n offense against the authority or the dignity of a court or of a judicial officer," Ex parte Earman, 85 Fla. 297, 95 So. 755, 760 (1923), or "any act which is calculated to embarrass, hinder, or obstruct the court in the administration of justice, or which is calculated to lessen its authority or its dignity." Ex parte Crews, 127 Fla. 381, 173 So. 275, 279 (1937).
We have previously explained that:
The major purpose of the law of contempt is to maintain and preserve the dignity of the judiciary and the orderly administration of justice. The standard to be applied in determining whether conduct is contemptuous is an objective one based upon a determination of the conduct's tendency to hinder the administration of justice, rather than a subjective one concerned with the sensitivities of a particular judge. Importantly, as noted above, the conduct alleged to be contemptuous must be calculated to cause harm.
*711 Murrell v. State, 595 So.2d 1049, 1050 (Fla. 4th DCA 1992).
At the outset, we note that direct criminal contempt proceedings, as opposed to indirect contempt proceedings, were appropriate in this case. Direct contempt occurs when a person speaks words or commits acts in the presence of the court or a judge acting judicially or when a person resists or interferes with the lawful authority of the court in its presence or so near the court or judge as to interrupt or hinder judicial proceedings. See Earman, 95 So. at 760. Indirect contempt, by contrast, occurs "not in the presence of a court or of a judge acting judicially, but at a distance under circumstances that reasonably tend to degrade the court or the judge as a judicial officer, or to obstruct, interrupt, prevent, or embarrass the administration of justice by the court or judge." Id.
Florida Rule of Criminal Procedure 3.830 provides: "A criminal contempt may be punished summarily if the court saw or heard the conduct constituting the contempt committed in the actual presence of the court." Even though appellant does not dispute that his conduct occurred in the presence of the court, he argues that a charge of perjury should not be addressed summarily by direct criminal contempt proceedings. However, courts have long recognized the power to punish persons for criminal contempt when perjury is established. See Emanuel v. State, 601 So.2d 1273, 1274 (Fla. 4th DCA 1992); Martin v. Case, 231 So.2d 279 (Fla. 4th DCA 1970). The supreme court, in State ex rel. Luban v. Coleman, 138 Fla. 555, 189 So. 713, 714 (1939), enunciated a three-prong test to determine if perjury is validly addressed by a direct criminal contempt proceeding: whether (1) the alleged false answers had an obstructive effect, (2) there existed judicial knowledge of the falsity of the testimony, and (3) the question was pertinent to the issue.
Here, the three-part test is met. First, appellant's false responses to the court's questions interrupted jury selection, requiring the court to take time to inquire further of him. Second, the court was presented with irrefutable evidence that appellant had been arrested before and was awaiting prosecution on a felony charge. Third, the court's questions were relevant to appellant's qualifications and fitness to serve on a jury. Hence, the court did not err in subjecting appellant to direct criminal contempt proceedings. Further, the court followed the procedural due process requirements of rule 3.830. The rule provides in pertinent part:
The judgment of guilt of contempt shall include a recital of those facts on which the adjudication of guilt is based. Prior to the adjudication of guilt the judge shall inform the defendant of the accusation against the defendant and inquire as to whether the defendant has any cause to show why he or she should not be adjudged guilty of contempt by the court and sentenced therefor. The defendant shall be given the opportunity to present evidence of excusing or mitigating circumstances. The judgment shall be signed by the judge and entered of record. Sentence shall be pronounced in open court.
Contrary to appellant's contention, the trial court did not err in failing to appoint counsel for the direct criminal contempt proceedings. See Roundtree v. State, 651 So.2d 1286 (Fla. 3d DCA 1995) (citing In re Oliver, 333 U.S. 257, 68 S.Ct. 499, 92 L.Ed. 682 (1948), and finding no error in the trial court's refusal to allow defense counsel to speak for defendant during criminal contempt proceedings); Saunders v. State, 319 So.2d 118 (Fla. 1st DCA 1975) *712 (holding there is no right to counsel in direct contempt proceedings).
Appellant also challenges the sufficiency of the evidence to sustain his conviction for criminal contempt. Criminal contempt is a crime. Bloom v. Illinois, 391 U.S. 194, 88 S.Ct. 1477, 20 L.Ed.2d 522 (1968); Aaron v. State, 284 So.2d 673, 676 (Fla.1973). Thus, a person charged with criminal contempt is presumed innocent until proven guilty beyond a reasonable doubt. Bowen v. Bowen, 471 So.2d 1274 (Fla.1985); Demetree v. State ex rel. Marsh, 89 So.2d 498 (Fla.1956); Kramer v. State, 800 So.2d 319 (Fla. 2d DCA 2001); Tide v. State, 804 So.2d 412, 413 (Fla. 4th DCA 2001) (quoting Levine v. State, 650 So.2d 666, 668 (Fla. 4th DCA 1995)); Braisted v. State, 614 So.2d 639, 640 (Fla. 4th DCA 1993). Moreover, our review of a contempt judgment is the same as it is for any judgment of criminal conviction.
As explained above, criminal contempt requires some willful act or omission calculated to embarrass or hinder the court or obstruct the administration of justice. See Stevens v. State, 547 So.2d 279, 280 (Fla. 5th DCA 1989); Sewell v. State, 443 So.2d 164, 165 (Fla. 1st DCA 1983). There must be proof that the accused intended to hinder or obstruct the administration of justice. Hunnefeld v. Futch, 557 So.2d 916 (Fla. 4th DCA 1990); Tubero v. Ellis, 472 So.2d 548, 550 (Fla. 4th DCA 1985). In some cases, the person's intent may be inferred from his actions in violating an express court order or directive. See Linowitz v. State, 498 So.2d 1315 (Fla. 3d DCA 1986) (holding that attorney's actions in reading transcripts of grand jury proceedings before their disclosure permitted inference that attorney intended to hinder administration of justice). Absent an admission by the accused, intent may be established by circumstantial evidence. See The Florida Bar v. Forrester, 916 So.2d 647, 652 (Fla.2005); Thomson v. State, 398 So.2d 514, 517 (Fla. 2d DCA 1981).
In this case, there was sufficient evidence from which the trial court could infer appellant's intent to give false testimony during voir dire and, thus, obstruct the administration of justice. The record shows that appellant, along with the other prospective jurors, was placed under oath and given clear and definite instructions on how to respond to questions during jury selection. When appellant, as part of the panel, was asked to raise his hand if he had any pending charges, he did not raise his hand. When he was called upon to individually answer Question 15  "[h]ave you or any member of your family been arrested"  he answered "no" to that question. He later admitted that his responses were not correct.
Although appellant explained to the court that he was nervous and confused and did not intend to cause any delay during the proceedings, issues regarding state of mind are for the trier of fact to resolve. See State v. Franchi, 746 So.2d 1126 (Fla. 4th DCA 1999). "Determination of the facts, and inferences to be drawn therefrom, is necessarily left to the decision of the trial judge, and his conclusions as to the acts done, and as to their contemptuous character or effect, will not be lightly disturbed by this court on habeas corpus. Nor will the findings of the judge ordinarily be set aside when reasonably supported by the facts appearing of record." State ex rel. Giblin v. Sullivan, 157 Fla. 496, 26 So.2d 509, 516 (1946). Moreover, "[a] disclaimer of intent to be contemptuous is not sufficient to deprive the court of the power to punish contempt." Ward v. State, 354 So.2d 438, 439 (Fla. 3d DCA 1978); Mann v. State, 476 So.2d 1369, 1374 (Fla. 2d DCA 1985) (holding that the intent requisite to criminal contempt *713 was evident beyond a reasonable doubt despite contemnor's testimony that he did not intend to offend the dignity and authority of the court, where court determined by contemnor's verbal deportment that his actions were willful and calculated to hinder orderly functions of the court).
In this case, the trial court determined that appellant was alert and able to intelligently and voluntarily respond to other questions posed during voir dire. It also noted opportunities appellant was given to come forward with complete and accurate information regarding his and his family members' prior arrests. The record sufficiently supports the court's findings that appellant, while under oath, knowingly misrepresented or withheld information concerning prior arrests and a pending criminal charge.
As the trial court found, appellant's actions constituted contempt because they tended to obstruct justice and interfere with the due administration of justice. Truth and candor during voir dire are critical to a trial judge's task of administering justice and preserving every litigant's right to a fair and impartial jury. In maintaining the integrity and efficacy of the jury selection process, trial judges are dependent upon a prospective juror's honest and candid responses, particularly on matters that bear directly on his or her qualifications and fitness to serve. In this case, appellant had a pending felony charge for possession of marijuana while he was being considered for jury service in a criminal case involving drugs.[1] Appellant's pending charge not only rendered him ineligible for jury service, but bore directly upon his ability to be a fair and impartial juror.
On a final point, appellant contends that the trial court abused its discretion in sentencing him to four months in jail. He asserts that the sentence is unreasonable, given his youth, confusion, nervousness, and lack of understanding as to the impact of his conduct on the proceedings. He points out that when the court questioned him individually and read Question 15 aloud to him in its entirety, he immediately corrected his responses and added that his father had been arrested. He argues that there was no indication that he purposefully lied to get on the jury panel and insists that his actions "were consistent with a developing teenager's embarrassment in having to reveal to a courtroom full of officials and much older adults that he had been arrested and has trouble reading."
Ordinarily, appellate courts in Florida have very limited authority to review sentences which are within the limits prescribed by law. See State ex rel. Grebstein v. Lehman, 100 Fla. 481, 129 So. 818, 821 (1930) ("It is not for this court to say what punishment, if any, another court should inflict for a contempt against that court, so long as it is imposed within the limitations fixed by the Constitution and the laws."); Bumgarner v. State, 245 So.2d 635, 638 (Fla. 4th DCA 1971) (affirming one-year county jail sentence for contempt and stating that "the penalty imposed by the trial judge should not be diminished by an appellate court" where the record reasonably supports it); Geary v. State, 139 So.2d 891 (Fla. 3d DCA 1962) (declining to disturb a six-month sentence imposed on a juror for violating the court's order not to discuss the case with a stranger and noting that a request to modify the sentence should be directed to the trial judge).
*714 In Aaron v. State, 284 So.2d 673 (Fla. 1973), the Florida Supreme Court clarified that criminal contempt is a crime and established limits for imposing sentences in contempt convictions. It held that a judge can sentence a person convicted of criminal contempt to a maximum of six months in jail where the judge, rather than a jury, tried the facts in the case. Because the petitioner in Aaron was sentenced to four months in jail following a bench trial for criminal contempt, the supreme court upheld his sentence.
Before Aaron set limits on sentences in contempt cases, trial courts sometimes imposed lengthy prison or jail terms for criminal contempt. Appellate courts reversed those sentences deemed excessive. Sentences were deemed excessive when the "severity of the sentence was not justified by the gravity of the offense"[2] or there was "no indication in the record that the defendant fully appreciated the possible relation of his conduct to the administration of justice."[3] In addition, courts found the sentences excessive because they did not consider contempt a crime.[4] However, in practically all of the cases wherein contempt sentences were vacated, the courts stressed the trial court's obligation to exercise its contempt power cautiously and sparingly and to ensure that the severity of the sentence was not disproportionate to the gravity of the offense. See State ex rel. Saunders v. Boyer, 166 So.2d 694, 696 (Fla. 2d DCA 1964) (stating that a judge must ensure that "the severity of the sentence [imposed is] balanced with the gravity of the offense . . . and that the sentence [is] not so excessive as to derogate judicial dignity").
In McDonald, we noted that Aaron's clarification that criminal contempt is a crime meant that "one found guilty of [contempt] may be sentenced in the same manner as anyone else found guilty of a crime of the same magnitude." 321 So.2d at 458. Nevertheless, we have continued to recognize that the crime of contempt is unique and to urge courts to use their power to punish contempt cautiously. In Emanuel v. State, 601 So.2d 1273 (Fla. 4th DCA 1992), we explained why courts are admonished *715 to use restraint in exercising this power:
"The power to punish direct criminal contempt is one of the most unusual of judicial powers: the judge who was the object or butt of the allegedly contemptuous conduct becomes the prosecutor and then sits in judgment over the very defendant who is said to have just assailed the judicial dignity. That precise circumstance is condoned nowhere else in the law. For that reason, the power must be cautiously and sparingly used (citations omitted)."
Id. at 1274 (quoting Fabian v. State, 585 So.2d 1158, 1158 (Fla. 4th DCA 1991) (Farmer, J., dissenting)). The supreme court has reiterated that "it is critical that the exercise of this contempt power never be used by a judge in a fit of anger, in an arbitrary manner, or for the judge's own sense of justice." In re Inquiry Concerning Perry, 641 So.2d 366, 368 (Fla.1994). We interpret these admonitions to apply to the ultimate penalty imposed for contempt, as well as to the contempt adjudication itself.
In Gruss v. State, 869 So.2d 770, 771 (Fla. 4th DCA 2004), we acknowledged "the problem inherent in punishing jurors." In that case, a prospective juror asked to be excused from jury service because of business commitments. After the trial judge refused to excuse the juror, the juror abruptly changed her answers regarding her ability to be fair and unbiased, simply to avoid jury duty. The trial judge held the juror in direct contempt of court. Then, exercising remarkable restraint, the judge punished the juror by ordering her to write a letter of apology and read it the next day in open court to the other jurors. We affirmed the contempt judgment, stating that "[w]e have no hesitancy in upholding the trial judge's handling in this case and commend her attention to detail and fairness in so doing." Id.
In a case more factually similar to this case, People v. Campbell, 284 A.D.2d 173, 727 N.Y.S.2d 74 (N.Y.App.Div.2001), the court affirmed a judgment finding a prospective juror guilty of contempt for not disclosing the full extent of his criminal record. In that case, the trial court sentenced the defendant to a thirty-day prison term and a $500 fine.
As discussed above, the trial judge in this case properly found appellant guilty of direct criminal contempt for his conduct during jury selection. We thus affirm the judgment of contempt. Although appellant's sentence of four months in jail is harsh under the circumstances, it falls within the limits prescribed by law. We therefore cannot disturb the sentence. Appellant's request to review the sentence, based on mitigating circumstances, is more appropriately directed to the trial judge, who can, in her discretion, grant a timely motion to reduce the sentence following issuance of the mandate in this case. See Fla. R.Crim. P. 3.800(c); Geary, 139 So.2d at 892; see also Neering v. State, 141 So.2d 615, 617 (Fla. 1st DCA 1962) (reducing the sentence where the record did not indicate that the defendant fully appreciated the possible relation of his conduct to the administration of justice, and discussing "the conflict between two vital considerations  the need to preserve the integrity of the court system and the ideal of tempering justice with mercy when an offense is unwittingly committed").
Affirmed.
STEVENSON, C.J., and GUNTHER, J., concur.
NOTES
[1] Appellant was on the venire for a criminal case, State v. Lucero, wherein the defendant was charged with possession of cocaine and possession of drug paraphernalia.
[2] See, e.g., Ballengee v. State, 144 So.2d 68, 72 (Fla. 2d DCA 1962) (noting that even had it upheld the defendant's conviction for criminal contempt, it would have reversed the five-year sentence as excessive because "the severity of the five-year prison sentence was not justified by the gravity of the offense"); see also Thiede v. State, 189 So.2d 490, 492 (Fla. 2d DCA 1966) (reversing five-year prison contempt sentences for the defendants' refusal to leave their jail cells and come to court as ordered because the gravity of the offense did not justify the severity of the sentence).
[3] See Neering v. State, 141 So.2d 615, 617 (Fla. 1st DCA 1962) (reversing the defendant's one-year sentence for criminal contempt for contacting a prospective juror in a personal injury case and remanding it for imposition of a new sentence not to exceed six months because there was "no indication in the record that the defendant fully appreciated the possible relation of his conduct to the administration of justice"); see also Cassidy v. Cassidy, 181 So.2d 649, 649-50 (Fla. 3d DCA 1966) (agreeing with the trial court's findings that the defendant made contemptuous statements in the trial judge's presence, but reversing the six-month jail sentence as unduly severe because the "the statements may well be those of a person who was under great pressure and conflict and who was not fully cognizant of their impact" and the record did not indicate that the defendant fully appreciated the possible relation of his conduct to the administration of justice).
[4] See Neering v. State, 141 So.2d 615, 616 (Fla. 1st DCA 1962); Thiede v. State, 189 So.2d 490 (Fla. 2nd DCA 1966); McDonald v. State, 321 So.2d 453 (Fla. 4th DCA 1962); Ballengee v. State, 144 So.2d 68 (Fla. 2nd DCA 1962); Cassidy v. Cassidy, 181 So.2d 649 (Fla. 3rd DCA 1966); Neering v. State, 141 So.2d 615 (Fla. 1st DCA 1962).