*608 PARIENTE, J.,
concurring in part and dissenting in part.
Noel Plank, an - apparently intoxicated prospective juror, was sentenced to thirty days’ incarceration for direct criminal contempt while still intoxicated and without the assistance of counsel to offer any mitigating, evidence or to clearly elicit from the trial court the basis, for the allegedly contemptuous conduct. I agree with the majority’s decision to vacate Plank’s contempt conviction because the conduct relied, on by the trial court was not direct criminal contempt, but I dissent from the majority’s holding .that a defendant is not entitled to counsel in.direct criminal contempt proceedings when incarceration of six months or less is imposed as punishment. While I share the majority’s concerns that judges must be able to immediately address contemptuous conduct that occurs in their presence, and disrupts judicial functions, those concerns can be effectuated in a way that still preserves a defendant’s right to be represented by an attorney prior to having his or her liberty taken away for days, weeks, or even as long as six months.
Indeed, the Fourth District' Court of Appeal has recognized this right to counsel in all direct criminal contempt proceedings since 1992, as has the Second District Court of Appeal since 2007. See Hayes v. State, 592 So.2d 327 (Fla. 4th DCA 1992); Woods v. State, 987 So.2d 669 (Fla. 2d DCA 2007). As these courts have concluded, requiring the appointment of counsel prior to the imposition of incarceration as punishment for direct criminal contempt does not prevent a trial judge from threatening to hold a disruptive individual in contempt, nor does it prevent the trial judge from removing a disruptive individual from the courtroom and taking the individual into custody, pending the contempt hearing. In fact, from the cases I have reviewed, the. direct criminal contempt hearing rarely occurs at the same time as the disruptive conduct, even when no lawyer is appointed. I . would not leave the right to counsel dependent on the discretion of the very trial judge,, who has already determined that the individual has committed direct criminal contempt.
While this Court holds that the constitutional" right to counsel does not apply to direct criminal contempt proceedings where incarceration is imposed as punishment, I urge the Rules Committee to propose for this Court’s consideration a modification of the direct criminal contempt rule of procedure to require appointment of counsel if the trial judge imposes or is contemplating a jail sentence in excess of twenty-four hours’ incarceration.[2] In this way, the contemnor can be immediately taken into custody so that judicial functions are no longer impacted, while being given notice of the misconduct underlying the direct criminal contempt and the opportunity to consult with an attorney to present a defense to the direct criminal contempt and to “present evidence of excusing or mitigating circumstances.” This case is a telling example of how illusory the. right to present mitigating evidence is when the defendant is not represented, by counsel.
The irony of the majority’s decision is that the failure to require counsel to be *609 appointed for indigent defendants will most negatively impact citizens who are in the courtroom on their own, unrepresented — and not the defendants cited by the State as the most outrageous examples of direct criminal contempt, who are already accused of crimes and are represented at trial by an attorney. The inability to consult with an .attorney in direct criminal contempt proceedings thus disparately affects those unrepresented individuals who have the least ability to conform; with courtroom expectations- in the first place and who are most in need of representation, including those with mental - health conditions, alcohol or substance abuse problems, or limited knowledge of judicial proceedings.
.1 recognize the uniqueness of direct criminal contempt proceedings, which occur directly before the judge, who also serves as the accuser, the adjudicator, and the sentences But there are numerous reasons why the appointment of counsel is in the best interests of all parties involved, including the judge who must sentence'the contemnor. In this case, for example, an attorney could have1 more clearly elicited, on the record, the basis for the allegedly contemptuous conduct, which would have assisted the appellate courts and, perhaps, given the trial-judge more time td consider whether the conduct truly amounted to contempt of court. The' appointment of counsel would also provide the trial , court with a better understanding of relevant mitigation and permit an attorney to suggest other possible forms of punishment, thus fostering the court’s ability to impose the most appropriate sentence. Further, counsel could ensure that the direct criminal contempt proceedings remain limited to the situation for which they were intended and assist the contemnor in comprehending the misconduct, understanding the ramifications of the behavior, and responding appropriately..
Allowing for the assistance of counsel will neither diminish any- respect for the judge’s authority, nor interfere with the judge’s unique and awesome power to maintain order in the courtroom. To the contrary, I strongly believe that the Constitution and the dignity of our -judicial system are enhanced by allowing an individual to- have the assistance of an attorney before a sanction of incarceration is imposed for direct criminal contempt.
Two grounds support this conclusion. First, the broad right to counsel provided under the United States Constitution, our Florida Constitution, and the applicable Florida statute requires the appointment of counsel for all offenses for which incarceration is imposed as punishment. Second, an individual’s actual need for counsel where a sentence of incarceration is at issuó remains especially strong, and the court’s inherent authority to stop direct contemptuous misconduct is not undermined by requiring the court to appoint counsel in cases where the trial judge is considering a sentence of incarceration, particularly in light of the -many tools and resources ■ available to the trial judge to take;immediate action to stop such misconduct. I address each of these grounds in detail below.
I. Right to Counsel When Incarceration is Possible Punishment
Under the majority’s holding, incarceration up to si? months for direct criminal contempt of court is the only exception to the requirement of appointed counsel for indigent defendants. The majority’s rule also precludes an unrepresented litigant who can afford counsel the opportunity, to hire or consult with counsel.
Yet, the United States Supreme Court has long recognized that incarceration is such a different form of punishment that *610 this loss of liberty- creates the dividing line of when the Sixth Amendment right to counsel is triggered. Specifically, in Argersinger v. Hamlin, 407 U.S. 25, 37, 92 S.Ct. 2006, 32 L.Ed.2d 530 (1972), the United States Supreme Court held that “absent a knowing and intelligent waiver, no person may be imprisoned for any offense, whether classified as petty, a misdemeanor, or a felony, unless he was represented by counsel at his trial.” Id. (emphasis added). As the Supreme Court later explained in Scott. v. Illinois, 440 U.S. 367, 373, 99 S.Ct. 1158, 59 L.Ed.2d 383 (1979), “[W]e believe that the central premise of Argersinger — that actual imprisonment is a penalty different in kind from fines or the mere threat of imprisonment — is eminently sound and warrants adoption of actual imprisonment as the line defining the constitutional right to appointment of counsel.”
The majority relies on In re Terry, 128 U.S. 289, 313, 9 S.Ct. 77, 32 L.Ed. 405 (1888), a nineteenth century case in which the United States Supreme Court held that the due process protections usually required before incarcerating an individual were not applicable in direct criminal contempt proceedings, because the direct criminal contempt power is essential to protecting the courts in the discharge of their functions. But, even in . 1888, the United States .Supreme Court recognized that the contempt authority is susceptible to abuse and restricted -its use to suppressing court-disrupting misconduct that occurred directly in front of the court by the “disorderly and violent.” Id. In Terry, the contemnor — who himself was an attorney-^-had assaulted- a marshal and interrupted a trial that was underway.
Although the United States Supreme Court has never overruled Terry, in the subsequent 128 years, the Supreme Court has placed stronger emphasis on the necessity of Sixth Amendment protections, specifically the right to counsel, when an individual faces incarceration. While the majority relies on Terry and even In re Oliver, 333 U.S. 257, 68 S.Ct. 499, 92 L.Ed. 682 (1948), those cases predated the Supreme Court’s landmark decision in Gideon v. Wainwright, which held that a defendant’s constitutional right to counsel is a prerequisite to-ensuring a “fair system'of justice.-” 372 U.S. 335, 344, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963). An attorney who is knowledgeable as to the law and can speak on behalf of his client is “fundamental and essential” to a fair proceéding. Id. at 341, 83 S.Ct. 792.
The United States Supreme Cpurt case of Bloom v. Illinois, 391 U.S. 194, 88 S.Ct. 1477, 20 L.Ed.2d 522 (1968), recognized the importance of constitutional protections in determining that the Sixth Amendment right to a jury trial applies to criminal contempt proceedings where punishment exceeds six months’ incarceration. The Supreme Court emphasized that, because this particular crime frequently involves a rejection of judicial authority, the ability to summarily imprison for contempt is.particularly “liable to abuse”:
Given that criminal contempt is a crime in .every fundamental, respect, the question is whether it is a crime to which the jury trial provisions of the Constitution apply. We hold that, it is, .primarily because in terms of those considerations which make the right to jury, trial fundamental in criminal cases, there is no substantial difference between serious contempts and other serious crimes. Indeed, in contempt cases an even more compelling argument can be made for providing a right to jury trial as a protection against the arbitrary exercise of official power. Contemptuous conduct, though a public wrong, often strikes at the most vulnerable2 and human quali *611 ties of a judge’s temperament. Even when the contempt is not a direct insult to the court or the judge, it frequently represents a rejection of judicial authority, or an interference with the judicial process or with the duties of officers of the court. ■ ,
The court has-long recognized, the-'potential for abuse in exercising the summary power to imprison for contempt— it is an “arbitrary” power which is “liable to abuse.” Ex parte Terry, 128 U.S. 289, 313 [9 S.Ct. 77, 32 L.Ed. 405] (1888). • ’
Bloom, 391 U.S. at 201-02/ 88 S.Ct. 1477 (emphasis addéd). •
More importantly, Florida’s'constitutional right to counsel under article I, section 16, of the Florida. Constitution has been construed even more broadly than its federal counterpart. See State v. Kelly, 999 So.2d 1029, 1041 (Fla.2008). This Court has pronounced. that incarceration, as a form of punishment, is such .a “penalty different in kind and severity from other penalties” that it triggers the constitutional right to counsel. Id. at 1052. We have further emphasized that the right to counsel applies even when there is a possibility of incarceration for a misdemeanor — as opposed to the Sixth Amendment, which requires counsel only where the defendant is actually imprisoned for the charged offense:
Under established Florida law, the right of indigents to appointed counsel in misdemeanor cases differs from its federal counterpart. In Argersinger v. Hamlin, 407 U.S. 25, 35-40, 92 S.Ct. 2006, 32 L.Ed.2d 530 (1972), the United States Supreme Court appeared to hold that prospective imprisonment for a misdemeanor offense guarantees indigents a right to appointed counsel, but the Court clarified in Scott v. Illinois, 440 U.S. 367, 373-74, 99 S.Ct. 1158, 59 L.Ed.2d 383 (1979), that under the Sixth Amendment this right- is limited to cases -in which the defendant is actually impris•oned for the charged offense.- Florida, however, has provided a different standard through its Constitution, Rules of' Criminal Procedure, and - the Florida Statutes.' See art. I, §§ 2, 16, Fla. Const.; Fla. R.Crim-. P. 3.111, 3.160; § 27.51, Fla. Stat. (2003). In.'Florida, indigent criminal defendants have a right to -appointed counsel “for offenses punishable by imprisonment.” Fla.. R.Crim. P. 3.111(b)(1) (199.2) (ejnphasis supplied). ., -
Mat 1040-41.
In Parisi v. Broward County, 769 So.2d 359, 364 (Fla.2000), this Court specifically recognized that Florida’s- constitutional rights — including the right to counsel— apply to direct criminal contempt proceedings. While providing an ’overview as to a court’s ' various contempt . powers, this Court -held that prior to the imposition of criminal contempt sanctions, a contemnor must be afforded, certain due process, including “the right of criminal defendants to be represented by.counsel, the right to have the State prove the offense beyond a reasonable doubt, and the right not to incriminate oneself.” This. Court then stated that “[i]n addition to these consti-tutionaLrights, our rules of criminal procedure provide specific procedures for both direct and indirect -criminal contempt.” Id. at 365 (emphasis added).
Besides 'honoring- the ■ constitutional rights of the individuals both- the Florida Statutes and-the Florida-Rules of Criminal Procedure likewise, recognize the importance of counsel when- -incarceration is at issue. Section 27.51, Florida'Statutes, provides that a public defender “shall” represent an indigent, and specifically provides that - this provision applies to those who are charged with criminal- contempt, *612 unless the court files an order of no imprisonment, § 27,51(l)(a)-(b), Fla. Stat.- In fact, .the addition of “criminal contempt”-to the crimes for which a court “shall” appoint counsel occurred in 1995 and the Legislature made no distinction between “indirect” and “direct” criminal contempt. See ch. 95-195, § 15, Laws of Fla.
This statute reflects the Legislature’s clear intent that counsel should be appointed where a defendant is facing a possible punishment of incarceration; particularly as the statute does not distinguish between direct and indirect criminal contempt for purposes of appointing counsel. Likewise, Florida Rule of Criminal Procedure 3.111(b)(1) broadly provides: “Counsel shall be provided to indigent persons in all prosecutions for offenses punishable by incarceration including appeals from the conviction thereof.” Fla. R.Crim. P. 3.111(b)(1) (emphasis added).
I acknowledge that Florida Rule of Criminal Procedure 3.830, governing direct criminal- contempt, unlike rule 3.840 that governs indirect criminal contempt, does not address entitlement to counsel. However, in my view, while rule 3.830 -states that direct criminal contempt “may” be punished “summarily,” the -term “summarily” does not mean without a modicum of due process rights; Moreover, nothing in rule 3.830. is inconsistent with rule 3.111(b)(1), which mandates counsel in all prosecutions punishable by incarceration.
Thus, the United States Constitution; our Florida Constitution, the Florida Statutes, and the Florida Rules of Criminal Procedure uniformly provide that an individual should be. entitled to counsel in direct criminal contempt proceedings before incarceration, is imposed. But even if the right to counsel were not grounded in any of these, authorities, the balance of public policy and practical concerns should still demand appointment of counsel before incarceration is imposed as punishment for direct criminal contempt.
II. The Public Policy Concerns of ' Direct Criminal Contempt
I strongly disagree with the State’s premise that “providing the contemnor with a lawyer and other procedural safeguards ... [would] really allow the con-temnor to disrupt the court system further” and would . undermine a court’s ability to ensure the administration of justice. This premise does not withstand scrutiny. In fact, considering the practical requirement of such a rule, especially in the context of this case, makes clear that exactly the opposite is true.
First, although the State claims that the courtroom could become-a “circus” if the misconduct is not stopped, this is simply a red herring. In reality, the requirement of counsel and the ‘ timing of the actual contempt hearing have ■ no impact on a judge’s ability to immediately stop the misconduct and take the contemnor into custody. See, e.g., Al-Hakim v. State, 53 So.3d 1171, 1172-73 (Fla. 2d DCA 2011)- (after a member of the public disturbed the courtroom in response to the public defender’s rejection of adopting a pro se motion, the contemnor was handcuffed and taken into custody and the contempt-proceeding was set for later that day); Forbes v. State, 933 So.2d 706, 708 (Fla. 4th DCA 2006) (after a 19-year-old prospective juror failed to disclose during voir dire that he had a pending criminal charge, the court set his contempt proceeding for a time after jury selection concluded); Hayes, 592 So.2d at 327-28 (after a criminal defendant left during a break to bring a witness back to court but arrived to court late, the trial judge required the defendant to appear at a hearing three weeks later and show cause why he should not be held in contempt of court). ' In most cases, including *613 this one, the actual contempt' hearing does not occur immediately.
For example, here, Plank was in the courtroom, sleeping, until a break was taken during the voir dire. The trial judge did not address' the contemptuous conduct — presumably-being drunk and sleeping during voir dire — in front of the other prospective jurors. Only after a break was taken did the trial judge send Plank for a breathalyzer test, after which point the judge conducted the contempt hearing and ultimately determined to incarcerate Plank for thirty days.
I suspect Plank would have remained incarcerated for thirty days if the Public Defender’s Office had not filed a motion on his behalf, which prompted the trial judge to mitigate the sentence to time served. At that point, when he finally received the assistance of an attorney, Plank, who was already behind on his mortgage payments, had lost seventeen days’ worth of income. It is difficult to see how justice was furthered by the events that transpired in this case.
Second, the practical effect of requiring the defendant to have counsel in direct criminal contempt proceedings will not impact a significant number of eases. Requiring the opportunity to retain or appoint counsel for direct criminal contempt cases is moot if the contemnor already has counsel. For instance, a contemnor who commits misconduct in the courtroom during his or her own trial is likely already represented by counsel, so the court does not need to take additional actions to appoint counsel for the direct criminal contempt proceedings. Ironically, then, the defendant who is already charged with a crime and is represented by counsel receives greater protections if charged with direct criminal contempt. In contrast, a layperson called to jury duty, as here, or a witness to a proceeding who may lack knowledge of courtroom procedures or become frustrated with the; adversarial nature of court proceedings does .not enjoy the same protections.
Third, an immediate sentence of- incarceration is not essential in order to ensure that courtroom business can be conducted efficiently • and promptly without further disruption, particularly, because the court, through its. bailiffs, can immediately 'take the contemnor into custody and remove him or her-from the courtroom.' As former Chief Justice Burger -observed: “The contempt power ... is of limited utility in dealing with an incorrigible; a cunning psychopath, or :an accused bent on frustrating the particular trial' or undermining the processes 'of justice. For such'as these, summary removal from the' courtroom is the really effective remedy.” Mayberry v. Pennsylvania, 400 U.S. 455, 467, 91 S.Ct. 499, 27 L.Ed.2d 532 (1971) (Burger, C.J., concurring). Other sanctions short of incarceration may be more effective or appropriate, especially when dealing with lay people. Indeed, not all direct criminal contempt proceedings even mandate a term of incarceration. See, e.g., Gruss v. State, 869 So.2d 770, 771 (Fla. 4th DGA 2004) (after a prospective juror was not excused from jury service despite business commitments and then attempted to avoid jury duty by abruptly asserting she could not be fair and unbiased, the trial judge held the juror in direct contempt of court and ordered her to write a letter of apology and read it the next day in open court).
Fourth, the appointment of counsel could help ensure that direct criminal contempt proceedings remain limited to the situation where the misconduct occurred in open court and truly affects the court’s authority, thus justifying the. use of direct criminal contempt. A person-adjudicated guilty of direct criminal contempt has the opportunity to “present evidence of. excus *614 ing or mitigating circumstances.” See Flal R.Crim. P. 3.830. Yet, most contemnors, without knowledge of the law, do not know what to say, much less understand what type of evidence constitutes excusing or mitigating circumstances.
In fact, that is what occurred in this very case. When the trials judge asked Plank for-mitigation, he replied that he did not know what to say. In addition, at the time of the contempt hearing, he was still intoxicated, thus further limiting^his ability to present mitigation. With the benefit .of counsel, Plank could have presented relevant mitigation and suggested a less severe sanction than incarceration. Fürther, counsel could have objected to the trial judge using uncharged crimes as a part of the decision in sentencing Plank to thirty days of incarceration.- When Plank obtained an attorney weeks later, the judge mitigated the sentence to. time served — but the defendant had already been incarcerated for seventeen days.
In sum,- the policy concerns behind reasons for appointing counsel weigh heavily in favor of extending this right to all individuals charged with direct criminal contempt who are facing incarceration. Requiring the appointment of counsel would not diminish the power of the trial judge to immediately remove an individual from the courtroom to prevent -any further disruption, and instead would enhance the dignity of the court and increase the chances that justice will be served.
III. Conclusion
As this Court has long held, in matters involving a court’s authority to address contempt, “a balance must be struck between' the recognition that courts are vested with contempt powers to vindicate their authority and the necessity of preventing abuse of these broad contempt powers.” Parisi' 769 So.2d at 363. I would conclude that prior to imposing incarceration as punishment for -direct criminal contempt, the court should allow the eontemnor to either obtain counsel or: have counsel appointed. However, in this case, the trial court erred in treating the proceeding as one of direct criminal contempt and therefore I concur with the majority’s decision to vacate the conviction.
QUINCE and PERRY, JJ., concur.

. In the recent case of In re Amendments to Florida Rule of Juvenile Procedure 8.150, 184 So.3d 1116 (Fla.2016), this Court approved a new subdivision to Florida Rule of Juvenile Procedure 8.150, which expressly provides that juveniles in direct contempt cases have the right to legal counsel, Although I recognize that juveniles are different than adults in many ways, nevertheless, many unrepresented individuals may lack the knowledge to adequately defend against the pending direct criminal contempt charge without the assistance of counsel.