DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**DENNIS DeMARTIN,**
Appellant,

v.

**STATE OF FLORIDA,**
Appellee.

No. 4D14-451

[March 30, 2016]

Appeal from the Circuit Court for the Fifteenth Judicial Circuit, Palm Beach County; Jeffrey Colbath, Judge; L.T. Case No. 50-2013-MM-006929-AXXX-MB.

Carey Haughwout, Public Defender, and Paul E. Petillo, Assistant Public Defender, West Palm Beach, for appellant.

Pamela Jo Bondi, Attorney General, Tallahassee, and Richard Valuntas, Assistant Attorney General, West Palm Beach, for appellee.

LEVINE, J.

Appellant appeals the trial court's order finding him guilty of two counts of contempt. Appellant claims that the trial court erred in finding him in contempt for failing to divulge during voir dire that his ex-wife was arrested for DUI and for conducting a drinking experiment during the pendency of a trial in which appellant was a juror. We find that competent substantial evidence supports the contempt convictions and, as such, we affirm. We also affirm the other issues appellant raises without further comment.

Appellant was a juror in the case of *State v. Goodman*, No. 502010CF005829AXXXMB, in which John Goodman was convicted of DUI manslaughter and failure to render aid. Subsequently, the trial court vacated Goodman's convictions and granted a new trial based on appellant's misconduct, which involved conducting a "drinking experiment" and failing to disclose during voir dire that his ex-wife had been arrested for DUI. The trial court found that both of appellant's actions had "cumulative effects" that transformed Goodman's trial from "an imperfect but fair trial into a constitutionally impermissible

proceeding." The trial court then issued an amended order directing appellant to show cause why he should not be held in indirect criminal contempt.

During the contempt trial, the state introduced into evidence excerpts from the *Goodman* trial, the transcript from the post-trial April 29, 2013 jury interview, as well as books appellant wrote. During the voir dire in the *Goodman* trial, the potential jurors were asked:

> Is there anyone who either themselves, or a friend, or family member, or do you know a father or an uncle, that has had alcoholism be such a focus of their upbringing, or their lifestyle, that any involvement of alcohol or people drinking alcohol is going to be a problem in terms of listening to that sort of testimony?

The potential jurors were then asked again if anyone "has had an issue with alcoholism or alcohol in their family it affected?"

During the voir dire, the venire was also asked, "Has anyone in the panel themselves, close friend or family member or someone that affects you, ever been arrested, charged or convicted or accused of a crime?" One potential juror responded to this question by recounting a boss involved in trafficking cocaine, and another potential juror recounted a cousin arrested for DUI. Appellant responded by saying that he "had maybe three speeding tickets. Listening to all this, I must have had a very boring life." Appellant further stated, "I'm even trying to think of my family. I don't think any of my family had any problems." Appellant did not disclose that his first ex-wife was arrested for DUI in 1997.

During voir dire, the trial court told the jury venire, "No Googling, no Facebooking, no Twitter, no texting, no trying to educate yourself on this case." At the beginning of trial, the trial court told the jury, "[W]e want to make sure that any influences you have, any knowledge or information you learn about this case comes through this process, so we know what you know." The court also stated, "What the evidence is is what you will see in this courtroom" and that "[t]he basic rule is that jurors must decide the case only on the evidence presented in the courtroom."

The trial court further instructed the jury:

> You must not do any research or look up any words or maps or names or anything else that may have anything to do with this case. This includes reading the newspaper, watching

television, or using a computer or a cell phone or the Internet, or any other electronic device, or any means at all, to get information related to this case or the people or places involved in this case.

The court also stated, "Jurors must not conduct any investigation on their own." The trial court elaborated that

> if you investigate or research or make any inquiries on your own outside of the courtroom, I will have no way to insure [sic] that they are proper or relevant or accurate responses to your inquiries. The parties likewise have no opportunity to dispute the accuracy of what you may find or to provide rebuttal evidence to it. . . . Non-court inquiries and investigations unfairly and improperly prevent the parties from having that opportunity of our judicial—that our judicial system promises.
>
> If you become aware of any violations of these instructions or any other instructions that I give you in this case, you must tell me by giving a note to the bailiff and then he will advise me.

The trial court concluded that "[t]his case must be tried by you only on the evidence presented during the trial in your presence and in the presence of the defendant and the attorneys and me."

During the pendency of the *Goodman* trial, appellant began writing a book in which he discussed the trial testimony, as well as his experiences during the trial. The night before deliberations began, appellant wrote the following:

> I spent most of the evening going over all my daily worksheets. I rechecked the evidence side and hear say [sic] side of the daily worksheets to be sure that I was ready before deliberation.
>
> It was bothering me that if there was proof that if Mr. Goodman only had 3 or 4 drinks, how drunk would he be? How drunk would I be? I decided to see.
>
> At 9pm I had a vodka and tonic, followed by another at 9:30pm and a third at 10pm. I went out and started to walk to the clubhouse which was two streets over in our complex.

I walked around there for a short time and then decided to go back home. I was confused and when I realized where I was, I was on the east side of the clubhouse on a street leading to my ex girlfriends [sic] condo. I cut across the grass back to my street and finally returned to my condo and went to sleep.

When the alarm went off the next morning, I got up and felt relieved. The question in my mind the night before was answered to me. Even if a person is not drunk, 3 or 4 drinks would make it impossible to operate a vehicle. I got dressed and was in a fine frame of mind to go to deliberate the evidence we had.

Appellant wrote that during jury deliberations, other jurors felt that Goodman was not fit to drive after having three or four drinks. Appellant noted to himself that "I surely decided that the night before."

After a verdict was entered in the *Goodman* case, appellant wrote another book. In this book, appellant recounted responding to an accident scene where his wife had been arrested for DUI. Appellant wrote that his wife met another person while attending a DUI program and that her excessive alcohol use was the reason for their divorce.

In this second book, appellant recounted the drinking experiment, while discussing the contents of his first book:

The controversy was over my Chapter 9's last two paragraphs where I had 3 drinks of vodka the night before we were to deliberate on the evidence and vote guilty or not. I knew I had to vote guilty as he left the scene of the accident and did not call 911. But I was troubled with the 30 year sentence he would receive. Both Mr. Goodman and myself would probably be dead in 30 years when the sentence was completed. At least I felt I would be. So that is why I had the 3 drinks. I wanted to know if I would have all my faculties to act rationally after 3 drinks.

As I wrote in that book, I found that I would have had problems doing the right thing after 3 drinks. I felt that it was proven that he was drunk added with the medication that I knew he and My New Love Interest were taking, he would have problems remembering to do the right thing also.

During the contempt trial, the state produced evidence that appellant

4

called his ex-wife during the *Goodman* trial to ask about her DUI. The ex-wife told an investigator that appellant knew about her arrest days or weeks after it occurred.

During the April 29, 2013 jury interview, appellant stated he knew his ex-wife was charged with DUI, but that he "blocked it out" and forgot it during voir dire. Although appellant claimed that he had medical issues that may cause him to forget, he admitted his book's representations about his ex-wife's DUI were accurate and that the DUI was something that really affected him.

During the contempt trial, the jury foreperson testified that appellant mentioned in front of the entire jury that he had done a drinking experiment when he went home. Appellant stated to the other jurors, before they had begun deliberating, that he wanted to see if the alcohol would affect him. The foreperson said that he told appellant that the jury should stick with the facts it heard in the trial.

During the defense case, appellant and his ex-wife testified that appellant's ex-wife had not told appellant about her arrest for DUI. In rebuttal, the state presented a private investigator who testified that the ex-wife had told him that appellant had spoken to her during the *Goodman* trial and that appellant had asked her about her DUI.

The trial court found appellant guilty of indirect criminal contempt on both counts. The trial court stated:

> [Appellant] willfully misrepresented his history, willfully failed to be honest and candid with the attorneys with regard to straight or simple questions regarding the effects that alcohol had on his loved ones and his attitudes towards them; also, was not candid, or was willfully deceitful about criminal history, and that these were material and did cause a mistrial.
>
> . . . .
>
> [Appellant], contrary to clear instructions from the Court, engaged in a drinking experiment to see how it would affect him and compare and contrast that to the testimony and what effect it might have on the Defendant in the Goodman trial. He was told not to do that and, nonetheless, he did that.
>
> . . . .

5

I do find that [appellant] willfully and deliberately engaged in a drinking experiment with an eye towards how that would affect him in his deliberations. I find that that is a material breach of the Court's order and is contemptuous, so I'll find him in contempt on the second count as well, and I'm convinced of that beyond a reasonable doubt, both Count I and Count II.

The trial court adjudicated appellant guilty. This appeal ensued.

"A judgment of contempt is entitled to a presumption of correctness and it will not be disturbed when supported by the record." *Milian v. State*, 764 So. 2d 860, 861 (Fla. 4th DCA 2000) (citation omitted). Further, "an appellate court will not disturb a trial court's factual findings when supported by competent substantial evidence; however, the appellate court is not bound by a trial court's conclusions of law." *Id.*

Section 38.22, Florida Statutes, states, "Every court may punish contempts against it whether such contempts be direct, indirect, or constructive, and in any such proceeding the court shall proceed to hear and determine all questions of law and fact."

"[T]o prove indirect criminal contempt, 'there must be proof beyond a reasonable doubt that the individual intended to disobey the court.'" *Tide v. State*, 804 So. 2d 412, 413 (Fla. 4th DCA 2001) (citation omitted). "[I]ntent for indirect criminal contempt can be inferred from the actions of the contemnor where it is foreseeable under the circumstances that the contemnor's conduct would prompt action disruptive of court proceedings." *Milian*, 764 So. 2d at 862. For example, "courts have long recognized the power to punish persons for criminal contempt when perjury is established." *Forbes v. State*, 933 So. 2d 706, 711 (Fla. 4th DCA 2006).

"Concealment or misstatement by a juror upon a voir dire examination is punishable as a contempt if its tendency and design are to obstruct the processes of justice." *Clark v. United States*, 289 U.S. 1, 10 (1933). The Court explained that "[i]f the answers to the questions are willfully evasive or knowingly untrue, the talesman, when accepted, is a juror in name only. His relation to the court and to the parties is tainted in its origin; it is a mere pretense and sham." *Id.* at 11. Thus to the court the "use of false swearing and concealment" is a "means whereby to accomplish . . . acceptance as a juror, and under cover of that relation obstruct the course of justice." *Id.*

6

In the instant case, competent substantial evidence supports appellant's contempt conviction for concealing and failing to disclose his ex-wife's DUI arrest. The trial court found appellant was willfully dishonest when answering "questions regarding the effects that alcohol had on his loved ones and his attitudes towards them, also was not candid, or was willfully deceitful about criminal history . . . ." Significantly, the state presented evidence that appellant had contacted his ex-wife during the trial and specifically asked her about her DUI arrest.

In *Forbes v. State*, 933 So. 2d 706 (Fla. 4th DCA 2006), a prospective juror answered no when asked if he or anyone in his family had ever been arrested and if he had any criminal charges pending against him. The state discovered that the prospective juror had a prior arrest and a pending criminal charge. The prospective juror then admitted that he had been arrested for felony possession of marijuana. After initially denying that anyone in his family had ever been arrested, he also admitted that his father had been arrested. This court affirmed the prospective juror's conviction for direct criminal contempt and sentenced him to four months in jail.

Like in *Forbes*, the record in the instant case supports the trial court's findings that appellant was willfully dishonest during voir dire when answering questions pertinent to the issue in the case. In fact, appellant's actions had more dire consequences than the prospective juror's actions in *Forbes*. In *Forbes*, the prospective juror's lies were discovered during jury selection, whereas here, appellant's untruths were not discovered until after trial, resulting in the granting of a mistrial.

Appellant also argues that the trial court erred in finding him in contempt for conducting a drinking experiment. Once again, competent substantial evidence supports appellant's contempt conviction for conducting a drinking experiment, contrary to the jury instructions. Appellant argues that the jury instructions did not specifically list drinking experiments on the list of prohibited activities for jurors. Initially, the list of prohibited activities is non-exclusive. It would not be possible to list for the jurors every possible activity that is prohibited and violative of the jury instructions as they were given.

Additionally, the drinking experiment would fall within the purview of activities specifically prohibited, which include "educat[ing] yourself," considering evidence outside of the courtroom, and conducting "research." It is hard to imagine that a juror, after hearing the instructions as given by the trial court, would not know that conducting an experiment about the effects of drinking alcohol would violate the jury instructions.

In summary, we find that the trial court did not err in convicting appellant of two counts of criminal contempt. Our jury trial system depends on the complete candor of all jurors during voir dire. Our jury trial system also requires the strict adherence of all jurors to the instructions given to them by the trial judge. Accordingly, we affirm appellant's convictions.

*Affirmed.*

GROSS and CONNER, JJ., concur.

*     *     *

**Not final until disposition of timely filed motion for rehearing.**